IN THE CIRCUIT COURT OF THE
11ᵗʰ JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2016-024867-CA-01 (34)

**KIMBERLY BLAKE-ROTH**, an individual,

      Plaintiff,

vs.

**WOLFGANG ROTH**, an individual,
**WOLFGANG ROTH & PARTNERS**,
**FINE ART, LLC**, a Florida limited liability
company, **ACG CAPITAL COMPANY,
LLC**, a Delaware limited liability company
**MODERN ART SERVICES, LLC**, a
Delaware limited liability company, **IAN
PECK**, an individual, and **346 NW 29ᵗʰ
STREET, LLC,** a Florida limited liability
company **d/b/a MUSEO VAULT,**

      Defendants.

_____/

## AMENDED COMPLAINT

COMES NOW, Plaintiff, KIMBERLY BLAKE-ROTH ("Blake-Roth" or "Plaintiff"), an

individual, by and through undersigned counsel hereby files this amended complaint against

defendants WOLFGANG ROTH ("Wolfgang Roth"), an individual, WOLFGANG ROTH &

PARTNERS, Fine Art, LLC ("Fine Art"), a Florida limited liability company, IAN PECK

("Peck"), an individual, ACG CAPITAL COMPANY, LLC ("ACG"), a Delaware limited

liability company, MODERN ART SERVICES, LLC ("Modern Art"), a Delaware limited

liability company, and 346 NW 29ᵗʰ STREET, LLC, a Florida limited liability company d/b/a

MUSEO VAULT ("Museo Vault") and in support thereof alleges the following:

**EXHIBIT**
State Court Filings Ex. 5

## JURISDICTION, PARTIES AND VENUE

1.      Plaintiff Blake-Roth, is a citizen of the State of Florida, at all times material hereto, has resided in Miami-Dade County, Florida, and is otherwise *sui juris*.

2.      Defendant Roth is a citizen of the State of Florida, at all times material hereto, has resided in Miami-Dade County, Florida.

3.      Defendant Peck, is a resident of the State of New York, at all times material hereto, has engaged in routine and continuing enterprise in, or directed to residents of, the State of Florida, has engaged in actionable conduct under the laws of the State of Florida, and is otherwise *sui juris*.

4.      Defendant Fine Art, is a limited liability company organized under the laws of the State of Florida, which at all times material hereto had its principal place of business at 1749 NE Miami Court, Suite 302, Miami, FL 33132.

5.      Defendant Modern Art, is a limited liability company organized under the laws of the State of Delaware, which at all times material hereto had its principal place of business at 1115 Broadway, 12th Floor, New York, NY 10010.

6.      Defendant ACG, is a limited liability company organized under the laws of the State of Delaware, which at all times material hereto had its principal place of business at 1115 Broadway, 12th Floor, New York, NY 10010.

## INTRODUCTION

7.      Defendant Peck is the founder, and upon information and belief, the sole member, or as applicable, sole shareholder of a "collection of companies under the name Art Capital Group ("ACG")"[1] engaged in the business of making loans secured by fine art and other aspects

---

[1] These companies include, but are not limited to:
        Art Capital Company, LLC

Keith D. Silverstein, P.A. ● 200 South Biscayne Blvd., Suite 4310 ● Miami, FL 33131
(T) (305) 868-0200 ● (F) (305) 868-1045

of the art business." Among the flurry of companies within the "ACG lending group," defendant Peck is the "principal manager" of ACG and Modern Art, which are the relevant entities for purposes of this complaint.[2]

8.     Because of the nature of the claims, defendant Peck, while vested with some traditional corporate authority, has transcended all bounds of colorable action, and is, at least to an extent, personally liable for the conduct exacted at his direction. Indeed, and as described below, some of the actions taken by defendants ACG and Modern Art, are criminal and fraudulent in nature, which surely affords Peck no corporate protection vis-à-vis his instrumentalities, i.e., ACG and Modern Art. In addition, because of the many entities through which defendant Peck conducts his business, which has now grown to include Patriot Credit Company, LLC ("Patriot"), the only way to ensure complete relief is to name Peck as a party, as he is the driving force behind all of the pertinent actors. Moreover, this Court has jurisdiction over Defendant Peck pursuant to Fla. Stat. §48.193.

9.     Defendant ACG is a single member limited liability company organized under the laws of Delaware, which, as of at least December 2015 was engaged in the lending business in

---

Art Capital Group, Inc.
Art Capital Group, LLC
ACG Credit Company, LLC
ACG Credit Company II, LLC
ACG Credit Company III, LLC
ACG Finance Company, LLC
ACG Finance Company III, LLC
American Photography, LLC
Bluefin Capital Partners, LLC
Fine Art Finance, LLC
Modern Art Services, LLC
Patriot Credit Company, LLC

[2] However, Plaintiff reserves the right to assert claims against Patriot Credit Company, LLC, who Peck (through ACG) had directed defendant Roth to make payments in the hundreds of thousands of dollars to. Plaintiff is unaware of any agreement or relationship between defendant Roth and Fine Art on the one hand and Patriot (as defined above) on the other. After discovery is taken, including discovery with regards to Patriot's bank records, Plaintiff reserves the right to amend this complaint to include a prayer for relief against Patriot and any other responsible parties.

Miami-Dade County, Florida.[3]   Defendant ACG has availed itself to affirmative relief in the Courts of Miami-Dade County, Florida, and is therefore subject to jurisdiction in the State of Florida. In addition, and in connection with that lending business, ACG maintains storage facilities at secured storage facilities in Miami-Dade County, which include, but are not limited to Museo Vault (346 NW 29th Street, LLC, d/b/a Museo Vault) ("Museo Vault"), and Atelier 4, Inc. (d/b/a Atelier 4 Miami "Atelier 4"). In addition, on numerous occasions beginning as early as January 2016, defendant ACG has sent employees, including its "Director" Ludovica Capobianco to Miami-Dade County in connection with its business dealing in the State of Florida and often retains agents in Miami-Dade County in furtherance of its lending operations. Pursuant to Fla. Stat. §48.193, as a result of the numerous acts committed by defendant ACG, it has subjected itself to the jurisdiction of this Court.

10.     Like defendant ACG, defendant Modern Art falls within Peck's "ACG lending group" and has entered into contracts and otherwise engaged in business ventures and operations within the State of Florida. Upon information and belief, Ms. Capobianco is also an agent, director, and/or employee of Modern Art, and also acts on their behalf when in Florida. Pursuant to Fla. as a result of the numerous acts committed by defendant Modern Art, it has subjected itself to the jurisdiction of this Court.

11.     This is an action for damages in excess of $15,000.00, exclusive of attorneys' fees, costs and interest.

---

[3] It should be noted that Plaintiff also believes that ACG (as defined by Peck) was also engaged in the art lending/finance business in Florida as early as at least 2006. *See Art Capital Group, LLC, ACG Credit Company, LLC, Fine Art Fiannce, LLC and Art Capital Group, Inc. v. Andrew Rose, Long Valley Farm, Inc., and Andrew Rose Fine Art*,, Case No. 2006-9356 CA 23, in the Eleventh Judicial Circuit in and For Miami-Dade County, Florida.

4

Keith D. Silverstein, P.A. ● 200 South Biscayne Blvd., Suite 4310 ● Miami, FL 33131
(T) (305) 868-0200 ● (F) (305) 868-1045

12.     This Court has *in personam* jurisdiction of defendant   Museo Vault because Museo Vault is organized under the laws of the State of Florida, conducts business in, and has its principal place of business in Miami-Dade County, Florida.

13.     Venue is proper in Miami-Dade County, Florida because the events giving rise to the instant cause(s) of action accrued in Miami, Dade County, Florida.

14.     All conditions precedent, if any, to the bringing of this lawsuit have been complied with, excused, or waived, and all administrative remedies, if any, have been exhausted or waived.

## GENERAL ALLEGATIONS

15.     Plaintiff married defendant Roth on June 15, 2010 in Miami-Dade County, Florida.

16.     At about that time, defendant Roth had a fifty percent (50%) interest in Fine Art, which operated an art gallery and was generally in the art brokerage business.

17.     All of defendant Roth's interest in defendant Fine Art is marital property.

18.     Prior to April 12, 2013, defendant Roth acquired the remaining fifty percent (50%) interest from his co-member, which he held in trust for Plaintiff's benefit. Thereafter, on April 12, 2013, and every year thereafter, Fine Art's filed an annual report with the Division of Corporations of the Florida Department of State designating Plaintiff as the co-managing member. This designation not only informs the public of her management authority, but also of her membership (ownership) interest.

19.     Unbeknownst to Plaintiff, in or around October 2015, defendant Roth had developed Stage IV Glioblastoma Multiforme (GBM), a form of brain cancer.

20.    In the months following the development of brain cancer, including December 2015 and January 2016, Peck engaged in negotiations with defendant Roth, via email and telephone communications directed to defendant Roth, who was then in Florida, whereby Peck would lend defendant Roth up to $2,000,000.00 which would be secured by property owned by defendant Roth and Fine Art.

21.    In early January, 2016, Peck provided defendant Roth with (i) a proposed Loan and Security Agreement for $2,000,000.00 Senior Credit Facility among Roth, Fine Art, Modern Art and ACG ("Loan Agreement") and (ii) an Arranger Agreement among Modern Art, Roth and Fine Art ("Arranger Agreement"). Both the Loan Agreement and Arranger Agreement were signed in Florida.

22.    As security for the Loan Agreement, defendant Roth, without the knowledge or consent from Plaintiff, pledged the following property:

    a.    Peter Beard, "Portraits of London, Francis Bacon, Paris, Nairorbi, Collected at Hog Ranch 1960-1970,
    b.    Inka Essenhigh, "Mass Suicide From Special Forces #2, 1997"
    c.    Ilya Kabakov, "Look at Her" April 1982.
    d.    David LaChapelle, "Cathedral" C Print, 2007.
    e.    Roy Lichenstein, "Sketch and Study for Still Life with Portrait", 1973.
    f.    Otto Piene "Feuerbid" 1980.
    g.    Otto Piene, "Mondgesicht 2000"
    h.    Andy Warhol, "Blotted" 1956. (1 of 2)
    i.    Andy Warhol, "Blotted Line 1956" (2 of 2)
    j.    Walton Ford, "Guilty Elephant" 1994.
    k.    Rolex Daytona Watch, 1976 Paul Newman.
    l.    Rolex Daytona Watch, 1969, Paul Newman.

Keith D. Silverstein, P.A. ● 200 South Biscayne Blvd., Suite 4310 ● Miami, FL 33131
(T) (305) 868-0200 ● (F) (305) 868-1045

23.     The pledged property, which totaled 12 items, comprised of 2 Rolex watches, and 10 works of art (collectively the "Collateral") was itemized in a letter, dated January 26, 2016. A true and correct copy of the January 26, 2016 letter is attached hereto as **Exhibit "A".**

24.     The January 26, 2016 letter was executed and delivered by Fine Art and Ms. Ludovica Capobianco, on behalf of ACG, in Miami-Dade County, Florida.

25.     Despite the fact that defendant Roth had not yet drawn upon the $2,000,000 credit facility, and notwithstanding the fact that the Collateral was limited to twelve (12) discrete items, on January 29, 2016, ACG recorded a UCC-1 filing statement in Florida claiming a security interest in eighteen (18) items. A true and correct copy of that Florida UCC filing is attached hereto as **Exhibit "B".**

26.     Among the additional items not previously set forth on the list of Collateral, are works not owned by defendants Roth or Fine Art, and works never agreed to be pledged by defendants Roth or Fine Art. The works improperly identified on the January 29, 2016 UCC-1 include the Robert Indiana Numbers 0-9 (number 15 on the UCC-1), "Liberta" by Roberto Matta (number 13 on the UCC-1), "Concreto Spaziale – Natura 1967" by Lucio Fontana (number 14 on the UCC-1, the "Spanische Sahara" by Otto Piene (number 16 on the UCC-1), and two rare Rolex watches. The market value of these additional items are in excess of $2,000,000.

27.     In or around March, 2016, defendant Roth, again without the knowledge or consent of Plaintiff sought to draw an additional $750,000.00 (the "second tranche") from the $2,000,000.00 credit facility.

28.     Defendant Roth, still without proper consent or approval by Plaintiff, intended to pledge the following three (3) additional items to secure the second tranche of the loan.

> a.     Sean Scully
> "Landline Fire", 2015

Oil on linen (215.9 cm x 190.5 cm)
        (the "Scully")

b.    Xavier Lalanne
"Set of 5, Male, Female plus 3 small sheep/ Flock of Sheep", 1997
Bronze & Epoxy Stone (various dimensions)
        (the "Lalanne")

c.    Ivan Navarro
"Nothing will come of nothing", 2015
Neon, LED lights, aluminum, wood, paint, mirror, and other various materials
60" x 60" x 12"
        (the "Navarro")

(Collectively the Scully, the Lalanne and the Navarro shall be referred to as the "Three Items").

29.    Pursuant to the proposed agreement, $530,000.00 of the proceeds from the $750,000.00 second tranche were to be paid to the Kewenig Gallery in Berlin Germany ("Kewenig"), which represented what was owed to them for the Scully.[4]

30.    Due to ACG's unexplained and unreasonable delays, on June 22, 2016, defendant Roth, formally rescinded the second tranche by sending written notice to Defendants' counsel. A true and correct copy of that notice is attached hereto as **Exhibit "C"**.

31.    At all times material to the second tranche, defendant Roth lacked legal capacity to enter into any enforceable agreements, either on his own behalf, or on behalf of Fine Art.

32.    Again, notwithstanding the fact that no signed security agreement with regards to the Three Items was signed or delivered, and the fact that ACG never sent any money under the request for the second tranche, on June 24, 2016 (two (2) days *after* the second tranche was *rescinded*), ACG filed what purports to be a UCC-3 financing statement amendment amending the earlier Florida UCC filing to now include a total of twenty-one (21) items. A true and correct copy of the June 24, 2016 UCC is attached hereto as **Exhibit "D"**.

---

[4] Because ACG never funded the second tranche, Kewenig remains the owner of the Scully.

33.     Then, on July 21, 2016, without any signed or delivered documents, ACG again filed a third UCC (in New York), wrongfully asserting a security interest in twenty-one (21) items, which at the time, were overwhelmingly[5] situated in Miami-Dade County, Florida.

34.     To date (now six (6) months after defendant Roth intended to draw the $750,000 second tranche), defendant ACG has not paid a single penny of the $750,000.00 second tranche or any portion thereof, to defendants Roth, Fine Art, or to anyone else in the world, including but not limited to Kewenig, on defendants Roth's or Fine Art's behalf.

35.     Since at least July 2016, ACG has been engaged in a campaign to take as much property from defendants Roth and Fine Art as possible, while destroying defendant Roth's stellar reputation along the way. All to the severe detriment of Plaintiff. Defendants ACG, Modern Art and Peck have actual knowledge of defendant Roth's medical condition and lack of capacity. Yet, in the face of defendant Roth's declining medical condition, they have become even more aggressive in their dilatory and improper practices.

36.     Defendant ACG has been made aware of the fact that defendant Roth acted without consent, and without capacity (due to his stage IV brain cancer), yet has nevertheless sought to disgorge millions of dollars of property from defendants Roth, Fine Art, and Plaintiff without any legal right to do so.

37.     In an attempt to avoid this Court's jurisdiction, defendant ACG has undertaken extravagant efforts to have all of the property at issue here (including the Collateral and the Three Items) removed from the State of Florida.

38.     Defendant ACG has threatened defendant Museo, the art storage facility, where the Three Items (alone valued in excess of $2,000,000.00), should they fail to take that property

---

[5] Approximately 15 of those items were located in Florida.

from defendants Roth, Fine Art and Plaintiff and turn it over to defendant AGC, or, allow defendants Roth, Fine Art or the Plaintiff to have them moved to another storage facility.

39.     Defendant ACG has also, maliciously filed claims against defendants Roth and Fine Art's insurance policy claiming that the Three Items were lost or stolen.

40.     Defendant ACG made these threats to defendant Museo and its counsel, both located here in Florida and Lloyds of London through telephone calls, emails and letters issued by their lawyers in New York and Texas.

**COUNT I**
**DECLARATORY RELIEF**
**(That Roth Lacked Legal Capacity and Authority To Enter Into**
**The Loan Agreement and the Arranger Agreement)**

Plaintiff adopts and realleges each and every allegations contained in paragraphs 1-40 above as though more fully set forth herein, and alleges further:

41.     During and all times after October 2016, defendant Roth's stage IV brain cancer caused defendant Roth to lack all legal capacity to enter into any legal agreements. Defendant Roth's lack of legal capacity also undermined his ability to act on behalf of any company, including but not limited to Fine Art.

42.     At the time defendant Roth is alleged to have executed the Loan Agreement and the Arranger Agreement, in addition to lacking legal capacity, he also lacked the authority to sell, buy, trade, encumber, pledge or otherwise deal with marital property, or material property belonging to Fine Art.

43.     All of the property that was alleged to have been pledged as security for the Loan Agreement and Arranger Agreement is either owned jointly by Plaintiff and defendant Roth, or defendant Fine Art, in which Plaintiff own at least a 50% interest.

44.    Property of that value could only be sold, bought, traded, encumbered, pledged or otherwise dealt with by mutual agreement of Plaintiff and defendant Roth.

45.    Pursuant the Fine Art operating agreement between Plaintiff and defendant Roth, neither could take material actions, including entering into transactions such as the Loan Agreement and Arranger Agreement, without the express consent of the other.

46.    ACG and Modern Art contend that the Loan Agreement and the Arranger Agreement are enforceable, in all respects against defendant Roth and Fine Art.

47.    Plaintiff contends that the Loan Agreement and the Arranger Agreement are unenforceable because, among other reasons, defendant Roth lacked the requisite legal capacity and legal authority to enter into the Loan Agreement and the Arranger Agreement.

48.    Accordingly, an actual controversy exists between the parties hereto.

49.    There is a bona fide, actual, present need for the declaration sought.

50.    Fla. Stat. §86.111 provides for expedited consideration of claims for declaratory relief and, based upon the foregoing, Plaintiff requests for such expedited consideration in this matter.

WHEREFORE, Plaintiff hereby respectfully requests a declaration by this Honorable Court that:

(a)    Wolfgang Roth lacked both legal capacity and legal authority at the time he allegedly entered into, and allegedly caused Fine Art to enter into, the Loan Agreement and the Arranger Agreement;

(b)    The second tranche was not legally effective because ACG failed to deliver any loan proceeds from the second tranche to Roth or Fine Art, or anyone else for that matter, including Kewenig;

(c)    Neither ACG, Modern Art nor Peck have any legal or otherwise valid security interests in the Collateral, the Three Items, or any of the other property identified in the UCC financing statements filed by ACG because there is no signed security agreement among ACG, Modern Art, Roth, Fine Art, and Plaintiff;

(d)    Neither ACG, Modern Art nor Peck have any legal or otherwise valid security interests in the Three Items, nor any other personal property identified in ACG and Modern Art's UCC filings because there is no signed security agreement mong the parties as to those items;

(e)    Kewenig is the owner of the Scully;

(f)    The Loan Agreement and Arranger Agreement are of no legal force or effect, and legally avoided, *nunc pro tunc*; and

(g)    Such further relief as this Court deems just and proper.

**COUNT II**
**DECLARATORY RELIEF**
**(The Loan Agreement And Arranger Agreement Are Unenforceable As A Matter Of Law Because They Are Criminally Usurious)**

Plaintiff adopts and realleges each and every allegations contained in paragraphs 1-40 above as though more fully set forth herein, and alleges further:

51.    Since at least January 2016[6], Defendants Peck, ACG and Modern Art have regularly offered, made, collected and are continuing to benefit from illegal lending activities in Florida. As more fully described below, by structuring the loan to include additional parties related to the lender, Defendants Peck, ACG and Modern Art are currently seeking interest and similar type charges that amount to an effective <u>annual</u> interest rate in excess of 70%. In addition, Defendant Modern Art has also threatened to assert a claim against defendants Roth and Fine Art for an alleged Arranger Default Payment that is equal to approximately $600,000.00. When viewed collectively, the effective <u>annual</u> interest rate would be close to 200% of the principal amount of the loan.

52.    In Florida, a lender may not charge an interest rate in excess of eighteen percent (18%) per annum for contracts of indebtedness below $500,000, or twenty-five percent (25%) per annum for contracts concerning indebtedness in an amount in excess of $500,000.00. *See* Fla. Stat. §687.02(1); §687.071(2)-(4).

---

[6] Based on court records, defendant Peck, through ACG and other related companies may have been operating in Florida for at least 10 years prior to this date.

12

Keith D. Silverstein, P.A. ● 200 South Biscayne Blvd., Suite 4310 ● Miami, FL 33131
(T) (305) 868-0200 ● (F) (305) 868-1045

53.     Contracts that charge interest rates in excess of those provided by law, are, by definition, usurious, criminal and unenforceable. *See* Fla. Stat. §687.02(1); §687.071(2)-(4),(7).

54.     Where the provisions of Florida's usury statute (ch. 687, Fla. Stats.) are violated, then, in addition to criminal penalties, the violator "shall forfeit the entire interest so charged" and where a usurious amount of interest has already been collected by the violating party, the penalty shall be increased to double the amount of the interest reserved, taken or exacted. Fla. Stat. §687.04.

55.     Under the usury statute, semantics and the mechanism by which a usurious lender collects the improper fees or interest are of little relevance and courts will instead look at the overall relationship between the parties when analyzing a transaction for usury and criminal conduct.

56.     It is undisputed that defendants Roth and Fine Art never received funds from ACG in excess of $457,423.27.[7] Nevertheless, defendants ACG and Modern Art have collected or are trying to collect in excess of $341,063.53 from defendants Roth and Fine Art in interest and other similar type charges.[8]

57.     The purported loan has a one (1) year maturity date, which would render those charges equivalent to a 74.56% annual interest rate.

---

[7] In January 2016, ACG charged defendants Roth and Fine Art, $57,576.73 on a loan with a stated principal amount of $500,000.00. No further money, loans or advances were ever taken by defendants Roth or Fine Art from ACG. In addition, in late August 2016, ACG sent defendants Roth and Fine Art a signed payoff letter seeking to collect an additional $268,486.80 from defendant Roth and Fine Art, notwithstanding the fact that the principal balance did not exceed $500,000.00. Since then defendant Roth paid ACG an additional $250,000.00 toward the principal, which effectively reduced the principal balance to $250,000.00. Nevertheless, defendant ACG continued to demand an additional $268,486.80 for what it describes as "fully earned interest" and "Arranger Success Fee" (singly accounting for $93,750.00).

[8] As of the drafting this Complaint, it is Plaintiff's understanding that defendants Peck, ACG and Modern Art have already increased the amounts sought by approximately $75,000.00.

Keith D. Silverstein, P.A. ● 200 South Biscayne Blvd., Suite 4310 ● Miami, FL 33131
(T) (305) 868-0200 ● (F) (305) 868-1045

58.     Pursuant to Fla. Stat. §687.071(3), "any person making an extension of credit to any person, who shall willfully and knowingly charge, take or receive interest thereon at a rate exceeding 45 percent per annum or the equivalent for a longer or shorter period of time, whether directly or indirectly or conspires to do so, commits a felony of the third degree…."

59.     In addition, pursuant to Fla. Stat. §687.071(4), "any person who shall knowingly and willfully make an extortionate extension of credit to any person or conspire so to do commits a felony of the second degree…."

60.     Finally, books of account and any other records recording extensions of credit in violation of ch. 687, Fla. Stats., is contraband, and any person who willfully possesses or maintains such books of accounts or other documents, or conspires to do so, commits a misdemeanor of the first degree. Fla. Stat. §687.071(5).

61.     Because defendants ACG and Modern Art are both instruments of defendant Peck, and in his own words, within the "ACG lending group", the charges that Peck attempts to divert between them are of no consequence and should be seen for what they are - illegal interest charges.

62.     Defendants Peck, ACG and Modern Art, by virtue of the monies they have retained, and payoff letters sent to defendants Roth and Fine Art, have and/or are trying to charge defendants Roth and Fine Art an effective interest rate prohibited by law.

63.     Defendants Peck, ACG and Modern Art's conduct and demands are criminal and render any alleged agreements unenforceable as a matter of law.

64.     Defendants Peck, ACG and Modern Art willfully and knowingly engaged in the practices described herein.

Keith D. Silverstein, P.A. ● 200 South Biscayne Blvd., Suite 4310 ● Miami, FL 33131
(T) (305) 868-0200 ● (F) (305) 868-1045

65.    Defendants Peck and employees and agents of his, ACG and Modern Art have conspired to engage in criminal practices declared unlawful under ch. 687, Fla. Stat.

66.    The actions and practices of Peck, ACG and Modern Art have injured Plaintiff and will likely continue to injure and prejudice her.

WHEREFORE, Plaintiff demands judgement against defendants Peck, ACG and Modern Art awarding:

(a)    A judgment for all damages arising from defendants Peck, ACG and Modern Art's illegal lending practices, including but not limited to a return of all interest and other loan related charges and, to the extent applicable, an award for damages equal to an amount double to the sum of any usurious interest that was collected;

(b)    An Order directing defendants Peck, ACG and Modern Art to immediately return any and all property that they may have in their possession, custody or control that belongs to, or is claimed to belong to Plaintiff, defendants Roth or Fine Art;

(c)    An Order dissolving any and all financing statements, liens or claims of liens filed by defendants Peck, ACG and Modern Art against any property that belongs to, or is claimed to belong to Plaintiff;

(d)    An Order cancelling all publicly filed documents which purport to claim a security interest in the Collateral, the Three Items or any other property set forth in the UCC financing statements naming defendants Roth and/or Fine Art, as a debtor; and

(e)    Such other and further relief this Court deems just and proper.

## COUNT III
## CIVIL DAMAGES FOR CRIMINAL FRAUDULENT PRACTICES

Plaintiff adopts and realleges each and every allegations contained in paragraphs 1-40 above as though more fully set forth herein, and alleges further:

67.    Fla. Stat. §817.535(2) provides in pertinent part:

(a) A Person who files or directs a filer to file, with the intent to defraud or harass another, any instrument containing a materially false, fictitious or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree....

(b) A person who violates paragraph (a) a second or subsequent time commits a felony of the second degree....

68.    To date, defendants Roth and Fine Art, albeit without legal capacity and without legal authority, only signed a single security agreement in January 2016. That list was limited to twelve (12) items, which are defined herein as the Collateral.

69.    Notwithstanding that fact, on January 29, 2016, AGC filed a UCC-1 Financing Statement claiming a security interest in eighteen (18) items of personal property.

70.    The January 29, 2016 UCC-1 Financing Statement improperly asserts a security interest in property with a market value in excess of $2,000,000.00[9]

71.    Then, on June 24, 2016, again without a signed security agreement, AGC filed yet another UCC financing statement claiming a security interest in twenty-one (21) items of personal property, including the Three Items. The property improperly identified on the June 24, 2016 UCC-3 has a market value in excess of $5,000,000.00.

72.    After a dispute among defendants Roth, Peck, AGC and Modern Art in late June 2016, AGC filed a third UCC financing statement early July 2016, again improperly claiming a security interest in twenty-one (21) items of personal property, primarily situated in Florida.

73.    To the extent title to the property identified in the three (3) UCC filings is held by defendants Roth or Fine Art, no security interest could have been given without Plaintiff's express consent.

74.    In addition, during the period in which defendants ACG and Modern Art filed the UCC's at issue, defendant Roth lacked legal capacity.

75.    With regards to the property beyond the Collateral, such as, for example, the Three Items, AGC lacked any authority, claim of right, or any other legal or equitable basis to file an instrument making claim against them.

76.    The UCC filings were materially false, fictitious or fraudulent.

---

[9] This valuation is over and above the value of the 12 items identified as Collateral in paragraph 18.

Keith D. Silverstein, P.A. ● 200 South Biscayne Blvd., Suite 4310 ● Miami, FL 33131
(T) (305) 868-0200 ● (F) (305) 868-1045

77.     The UCC filings illegally impugned Plaintiff's property rights in Three Items, and the other works not subject to any alleged agreement among defendants Roth, Fine Art and AGC.

78.     The materially false, fictitious and fraudulent security instruments were filed with the intent to defraud, harass and injure Plaintiff, defendants Roth and Fine Art by, among other things, impairing their ability to trade or borrow against those items.

79.     The materially false, fictitious and fraudulent security instruments were utilized by Peck, ACG and Modern Art's campaign to put pressure on defendants Roth, Fine Art and Plaintiff in an effort to orchestrate alleged defaults (which never occurred) and wreak havoc within Plaintiff's, defendant Roth's and defendant Fine Art's enterprises.

80.     These efforts, in addition to causing economic harm to Plaintiff, defendant Roth and Fine Art, have also caused significant injury to defendant Roth's health.

81.     Pursuant to Fla. Stat. §817.535(8)(a) "any person adversely affected by an instrument filed in the official record which contains a materially false, fictitious, or fraudulent statement or representation has a civil cause of action."

82.     Pursuant to Fla. Stat. §817.535(8), this Court has the authority to determine where the entire instrument or certain parts of such instrument are null and void *ab initio*.

83.     Plaintiff has hired undersigned counsel and has agreed to pay reasonable legal fees in connection with this action.

84.     The dilatory practices of defendants Peck, ACG and Modern Art, as described above, have cause Plaintiff damage, which is continuing.

WHEREFORE, Plaintiff demands judgement against defendants Peck, ACG and Modern Art awarding:

(a) An order for preliminary and permanent injunctive relief enjoining Peck, ACG and Modern Art from taking any action in reliance or premised upon the UCC filings at issue in this case, and from any way interfering with the Collateral, the Three Items and any other items identified on ACG and Modern Art's improper UCC filings;

(b) Declaring invalid all three of defendant ACG's UCC filings naming defendant Roth and/or Fine Art, as debtors;

(c) Ordering the secretary of state to seal the filings from the official records and removing them from any electronic database used of indexing official records;

(d) A judgement against defendants Peck, ACG and Modern Art assessing a civil penalty against them equal to $2,500.00 for each instrument in violation of Fla. Stat. §817.535;

(e) A judgment against defendants Peck, ACG and Modern Art awarding Plaintiff her attorneys' fees and costs incurred in connection with this action pursuant to Fla. Stat. §817.535(3)(c); and

(f) Such other and further relief this Court deems necessary and proper.

## COUNT IV
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

Plaintiff adopts and realleges each and every allegations contained in paragraphs 1-40

above as though more fully set forth herein, and alleges further:

85. This is a claim under Florida's Deceptive and Unfair Trade Practices Act

("FDUTPA"), Florida Statute§§ 501.201-501.2013.

86. Plaintiff, is a consumer as defined by the statute.

87. Defendants Peck, ACG and Modern Art are engaged in trade or commerce as

defined under FDUTPA by soliciting, providing and/or offering a service or thing of value.

88. A deceptive trade practice is one that is likely to mislead consumers or is the

result of a violation of any law, statute, rule, regulation which proscribes unfair, deceptive, or

unconscionable acts or practices.

89. Defendants Peck, ACG and Modern Art employed deceptive trade practices

through their attempt to conceal lender related charges, and borrower rights in connection with

the predatory loan practices. In addition, defendants Peck, ACG and Modern Art's practices

have have violated Plaintiff's property rights in the Three Items, the Collateral and other property identified in their improper UCC filings.

90.    As a direct and proximate result of these deceptive or unfair trade practices, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment against defendants Peck, ACG and Modern Art for violation of Florida's Deceptive and Unfair Trade Practices Act, and seeks damages, interest and costs, pursuant to the statute, and for such other relief as this court deems just and proper. Plaintiff reserves the right to assert a demand for punitive damages.

## COUNT V
## CIVIL CONSPIRACY

Plaintiff adopts and realleges each and every allegations contained in paragraphs 1-40 above as though more fully set forth herein, and alleges further:

91.    This is a claim for civil conspiracy.

92.    As described more fully above, defendants Peck, ACG and Modern Art, in concert with each other, knowingly acted in concert to implement the scheme to defraud Plaintiff. In doing so, defendants Peck, ACG and Modern Art acted with full knowledge and awareness that the materially false, fictitious and fraudulent security instruments were utilized by Peck, ACG and Modern Art to put pressure on defendants Roth, Fine Art and Plaintiff in an effort to orchestrate alleged defaults (which never occurred) and wreak havoc within Plaintiff's, defendant Roth's and defendant Fine Art's enterprises

93.    The overt acts of defendants Peck, ACG and Modern Art were contrary to law, as stated above.

94.    There was a meeting of the minds between and among defendants Peck, ACG and Modern Art and other individuals and entities, both known and unknown, to commit the unlawful acts as alleged herein.

95.    This conspiracy to commit these unlawful overt acts proximately caused Plaintiff's damages.

WHEREFORE, the Plaintiff demand judgment in their favor and against defendants Peck, ACG and Modern Art for damages, interest, costs, and any other such relief that this Court deems just and proper. Plaintiff reserves the right to assert a demand for punitive damages.

## STATEMENT REGADING INTENT TO SEEK
## PUNITIVE DAMAGAES AGAINST DEFENDANTS

96.    While not pleading punitive damages as a separate cause of action, the Plaintiff puts defendants Peck, ACG and Modern Art on notice that their individual and collective acts and omissions were wonton, reckless and evidence a disregard of the rights and safety of the general public and of the plaintiff, and that punitive damages will be requested to punish defendants and deter others from similar conduct.

## DEMAND FOR A JURY TRIAL

97.    Plaintiff demands a trial by jury of causes of action so triable.

Keith D. Silverstein, P.A. ● 200 South Biscayne Blvd., Suite 4310 ● Miami, FL 33131
(T) (305) 868-0200 ● (F) (305) 868-1045

DATED:  October 4, 2016

Respectfully Submitted,

KEITH D. SILVERSTEIN, P.A.
*Attorneys for Plaintiff*
200 South Biscayne Blvd., Suite 4310
Miami, Florida 33131
Telephone: (305) 868-0200
Facsimile: (305) 868-1045
E-Mail: keith.silverstein@gmail.com

By:___ /s/Keith Silverstein, Esq._____
        Keith Silverstein
        Florida Bar No. 86820

Exhibit A



January 26, 2016

This document is to confirm that the following items are to be stored at Museo Vault, Miami in Unit 2048 in the sole possession of Art Capital Group.   The items are the property of Wolfgang Roth & Partners, Fine Art of Miami and are being held by Art Capital Group as collateral.

The works have been inspected to verify their condition and location by Ludovica Capobianco of Capital Art Group and Murdock MacKenzie of Wolfgang Roth & Partners, Fine Art on this date prior to handing exclusive access to the unit over to Capital Art Group.

The following are the items being used as collateral:

1. Peter Beard "Portraits London, Francis Bacon, Paris, Nairorbi, Collected at Hog Ranch 1960 -1970.   Unique gelatin silver print and color print, collage with ink and blood handwork.   Signed titled and dated.

2. Inka Essenhigh "Mass Suicide From Special Forces #2, 1997.  Oil Enamel on Canvas. Signed, titled and dated.

3. Ilya Kabakov "Look at Her" April 1982.  Oil and Enamel on Masonite.  Signed and dated.

4. David LaChapelle "Cathedral", C Print, 2007. Certificate from Artist

5. Roy Lichtenstein "Sketch and Study for *Still Life with Portrait*, 1973.  Graphite and Colored Pencil on Paper, Signed and dated.

6. Otto Piene "Feuerbild" 1980.  Oil on Canvas

7. Otto Piene "Mondgesicht 2000".  Oil and *Mixed Media* on Canvas.  Signed and Inscribed.

8. Andy Warhol  "Blotted " 1956.  Mixed Media and watercolor on heavy paper. (1 of 2)

9. Andy Warhol "Blotted Line" 1956.  Mixed Media and Watercolor on heavy paper. (2 of 2)

10.    Walton Ford "Guilty Elephant" 1994  Oil on panel. Signed titled and dated reverse.

11.    Rolex Daytona Watch 1976  Paul Newman.  In original case.

12.    Rolex Daytona Watch 1969 Paul Newman Extremely Rare Case numbered 2621529/1969  In original case.

_____        _____
Murdock MacKenzie/WRP Fine Art                Date        1·21·16

_____        _____
Ludovica Capobianco/Art Capital Gp           Date        01-26 2016

# Exhibit B

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE
## FINANCING STATEMENT FORM

| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON |
| Jonathan S. Berck, Esq.  (212) 812-2165 |
| B. Email Address law@jsberck.com |
| C. SEND ACKNOWLEDGEMENT TO: |
| Name |
| Address        CSC |
| Address    1201 Hays Street |
| City/State  Tallahassee, FL  32301 |
| (800) 927-9800 |

**FLORIDA SECURED TRANSACTION REGISTRY**

# FILED

### 2016 Jan 29 10:53 AM

### ****** 20160637347X ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1.  DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names

| 1.a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 1.b INDIVIDUAL'S SURNAME<br>Roth | FIRST PERSONAL NAME<br>Wolfgang | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1.c MAILING ADDRESS Line One<br>5133 Fisher Island Drive | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY<br>Miami Beach | STATE<br>FL | POSTAL CODE<br>33109 | COUNTRY<br>USA |

**2.  ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names

| 2.a ORGANIZATION'S NAME<br>Wolfgang Roth & Partners Fine Art, L.L.C. | | | | |
|---|---|---|---|---|
| 2.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2.c MAILING ADDRESS Line One<br>1749 N.E. Miami Court | This space not available. | | | |
| MAILING ADDRESS Line Two<br>Unit 302 | CITY<br>Miami | STATE<br>FL | POSTAL CODE<br>33132 | COUNTRY<br>USA |

**3.  SECURED PARTY'S NAME**  (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (3a OR 3b)

| 3.a ORGANIZATION'S NAME<br>ACG Capital Company, LLC | | | | |
|---|---|---|---|---|
| 3.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3.c MAILING ADDRESS Line One<br>1115 Broadway | This space not available. | | | |
| MAILING ADDRESS Line Two<br>12th Floor | CITY<br>New York | STATE<br>NY | POSTAL CODE<br>10010 | COUNTRY<br>USA |

**4.** This **FINANCING STATEMENT** covers the following collateral:

The collateral set forth in Schedule A hereto, which is incorporated by reference as part of this UCC Financing Statement.

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX** – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX

[X] All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

[ ] Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

SCHEDULE A TO UCC-1 FINANCING STATEMENT
DEBTORS:   WOLFGANG ROTH
                     WOLFGANG ROTH & PARTNERS FINE ART, L.L.C.

All rights, title and interest of Debtors in and to the following property, whether now owned or hereafter acquired or arising and wheresoever located: (a) the inventory, equipment and goods (the "Artwork") listed below; (b) all accounts, contract rights, general intangibles, letters of credit, letter of credit rights (whether or not the letter of credit is evidenced by a writing), supporting obligations, instruments (including promissory notes), chattel paper (whether tangible or electronic), documents, notes, documents of title, and commercial tort claims that are related in any way to the Artwork; (c) all rights to copy, license, sell or otherwise transfer the Artwork or images of the Artwork; (d) all copyrights, trademarks, copyright, trademark or service mark registrations, copyright, trademark or service mark applications relating to the Artwork, and (i) all registrations that issue therefrom and all renewals thereof, (ii) all income, royalties, damages and payments now or hereafter due or payable with respect thereto, including  damages and payments for past or future infringements thereof, (iii) the right to sue for past, present and future infringements thereof, and (iv) all rights corresponding thereto throughout the world (the items described in this clause (d) are, collectively, referred to herein as the "Marks"); (e) the goodwill of Debtors' business connected with and symbolized by the Marks; (f) all of Debtors' rights and obligations pursuant to its licenses and other agreements with any other Person or Persons with respect to any Marks; (g) all insurance proceeds of or relating to any of the foregoing; (h) all books and records relating to any of the foregoing; and (i) all accessions and additions to, substitutions for, and replacements, products and proceeds of any of the foregoing.

### THE ARTWORK

1. Beard, Peter 1938
   Portraits London, ( F.Bacon ) , Paris , Nairobi
   Collected at Hog Ranch 1960-70
   Unique gelatin silver print and color print, collage
   With ink and blood handwork
   183,3 x 127 cm (73,6 x 50,8 inch)
   Signed, titled, dated and annotated in ink
   Prov: Time is always now Gallery, New York

2. Ford, Walton 1960
   " Guilty Elephant 1994 "
   Oil on panel, signed , titled and dated reverse
   63 x 46 inch (160 x 117 cm)
   Prov: Paul Kasmin Gallery , New York
   Acquired by the present owner from the above

3. Lichtenstein, Roy 1923 – 1997
   Sketch and Study for Still Life with Portrait, 1973

1

Graphite and Colored pencil on Paper
Signed and dated 73 / verso
4 11/16 x 7 15/16 inch (12,5 x 20 cm)
Catalogue # Moma 1985.813
Prov: Private Collection, New York (last 35 Years Loan to the Museum of Modern Art
)
Exhib: The Drawings of R.Lichtenstein / Mar. 15 – June 02. 1987 / Moma , New York
Lit: The Drawings of R.Lichtenstein , Bernice Rose , Catalogue by Elisabeth
Richebourg Rea, Harry Abrams and Moma 1987, No. 118 , page 188

4.  Lachapelle , David 1964
    " Cathedral , Los Angeles " 2007
    Digital color coupler print , 48 1/2 x 65 3/4 inch ( 123,2 x 167 cm )
    Signed on an artist label / Verso
    Edit. 7/7
    Prov: Acquired directly from the artist
    Private collection , UK

5.  Essenhigh , Inka 1969
    " Mass Suicide from Special Forces # 2 , 1997 "
    Oil Enamel on Canvas
    Signed , titled and dated 1997 / Verso
    54 x 60 inch ( 137,2 x 152,4 cm )
    Prov : Stefan Stux Gallery , New York
    Exhib : New York / Exit Art Wild , Jan. 17 – Mar. 29. 1998

6.  Kabakov, Ilya 1933
    Look at Her, April 1982
    Oil on Enamel on Masonite
    44 x 80 inch (110 x 200 cm)
    Signed, dated on reverse --- Kabakov 82 and Archiv No. 61
    Prov: Collection Dina Vierny , Paris
    Exhib: Museum of Modern Art, New York / Oct. 1991 – Jan. 1992
    Annandale on Husdon / Center for Curatorial
    Ilya Kabakov 1969 – 1998 / Jun. – Sep. 2000
    Lit: Ilya Kabakov / Catalogue Raisonnee, Vol. I / Paintings 1969 – 1998
    No. 74, Page 143 (Archiv No. 61)

7.  Otto Piene
    Mondgesicht, 2000
    Mixed media on canvas
    23,6 x 19,9 inches

8.  Piene, Otto
    Feuerbild, 1980

Oil on screen
27,55 x 35,43 inches (70 x 50 cm)

9. Warhol , Andy 1928
" Blotted Line 1956 "
Mixed Media and Watercolour on heavy paper , 1956
19,3 x 13,4 inch ( 49 x 34 cm )
Prov : Collection Prof . Reiner Crone / Munich
Gift of the artist to Prof. Rainer Crone
Exhib: Warhol Retrospective , Berlin 2001/2 / page 16 / Heiner Bastian

10. Warhol , Andy 1928
" Blotted Line 1956 " Signed lower right
Mixed Media and watercolour on heavy paper , 1956
19,3 x 13,4 inch ( 49 x 34 cm )
Prov : Collection Prof. Rainer Crone / Munchen
Gift of the artist to Prof. Reiner Crone
Exhib: Warhol Retrospective, Berlin 2001/2 page 16 / Heiner Bastian

11. Rolex Daytona 1976
Mint condition / Last service Rolex Wempe 2012
Case/Ref' 6263
Prov : Private Collection Berlin

12. Rolex Daytona – Paul Newman
Extremly rare Stainless Steel – Red outer ring-- lever Movement Calibre 722-1 /
Referenz 6262
Case numbered 2621529 --- 1969
Certificate by the Company Wagner / Rolex license holder/ Vienna enclosed
Watch is in perfect condition

13. Matta, Roberto (1911 – 2002)
Libertà, 1967/68
Oil on Canvas
28 x 42 inch (69 x 105 cm)
Monogram Lower right
Prov : Galleria Annunciata , Milan , ( Label on verso)
Galleria d'Arte il Castello , Milan ( Label on verso )
Galleria d'Arte Cafiso , Milan
European Private Collection
Photo Certificate : Archives de 'Oeuvre de Matta , Paris ,
21. December 2009

14. Fontana , Lucio 1899 – 1968
" Concetto Spaziale – Natura 1967 / Signed and numbered on the Bottom "

Nr. 346 / 500 Polished Bass 11 x 8,8 x 8,8 inch ( 27 x 22 x 22 cm )
Prov: Privat Collection Italy
Exhib: Tokio Lucio Fontana, Spatial Cenception , Tama University 1990 , page 71
Lit : Lucio Fontana , H,Rigo , C.Ruhe , Reverdito 2007 , Page 139 , B-2
Prov : German Privat Collection
Both pieces are in mint condition

15. Robert Indiana
Numbers from 9 to 0
10 pieces, dimensions variable

16. Piene , Otto 1928 – 2014
" Spanische Sahara " 1975
Oil , Mixed Media on canvas / Verso : Signed , dated 75 and Titled
27 x 39 inch ( 67 x 97 cm )
Prov: Galerie Schoeller , Dusseldorf , Germany
Private Collection, purchased from above in the 70s

17. Rolex Daytona – Paul Newman ca.1969
Cosmograph – Steel
Caliber 722-1 / Case No. 2003057 , Ref. 6239
Very rare – white with red outer ring.
Watch has papers from Wagner / Vienna Rolex Dealer
Watch in mint condition

18. Rolex Daytona Oyster Cosmograph ca. 1980
Gold 18ct.
Calibre 727 / Ref . 6265 – Case No. 6899574
Ca . 36 mm
Watch in in mint condition

4

Exhibit C

# THE HOFFMAN LAW FIRM

### 330 WEST 72ND STREET

### NEW YORK, N.Y. 10023

TELEPHONE: 212 873 6200

FACSIMILE: 212 974 7245

BARBARA T. HOFFMAN

artlaw@hoffmanlaw.org

June 22, 2016

*Via E-Mail*
Thomas Annis
The Majorie Firm
4901 Lyndon B. Johnson Fwy, 4th Floor
Dallas, TX 75244
Phone: (214) 522-7400 ext. 328
Fax: (214) 522-7911
Email: tannis@themajoriefirm.com

Dear Mr. Annis,

This is to further inform you of your client's breach of the amendment. The amendment is rescinded and is of no force and effect. My clients do not want the loan.

In order that we may resolve this matter with efficiency and little legal cost, please arrange for my clients to have access to the collateral currently in storage. We request a release of the collateral but for an appraised amount of $500,000.00. This is based on the damages suffered by my client and justifies the release of all but the amount required to cover the first loan.

Please respond by 9:00am EST, tomorrow morning, June 23, 2016. Thank you.

Sincerely Yours,

*/s/ Barbara Hoffman*
Barbara Hoffman

CC: Frank Majorie

# Exhibit D

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT AMENDMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Jonathan S. Berck    (212) 812-2165

Email Address law@jsberck.com

CSC
1201 Hays Street
Tallahassee, FL 32301
(800) 927-9800

**FLORIDA SECURED TRANSACTION REGISTRY**

## FILED

2016 Jun 24 01:43 PM

****** 201607991037 ******

TH

| 1a. INITIAL FINANCING STATEMENT FILE # 20160637347X | 1b. | This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|---|

**2. CURRENT RECORD INFORMATION – DEBTOR NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **2b. INDIVIDUAL'S SURNAME** Roth | **FIRST PERSONAL NAME** Wolfgang | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

**3. CURRENT RECORD INFORMATION – SECURED PARTY NAME – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

| 3a. ORGANIZATION'S NAME ACG Capital Company, LLC | | | |
|---|---|---|---|
| **3b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

**4.** [ ] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** [ ] **ASSIGNMENT** [ ] Full or [ ] Partial: Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** [ ] **AMENDMENT (PARTY INFORMATION):** This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
[ ] CHANGE name and/or address: Give current record name in item 8a or 8b. Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.
[ ] DELETE name: Give record name to be deleted in item 8a or 8b.
[ ] ADD name: Complete item 9a or 9b, and 9c.

**8. CURRENT RECORD INFORMATION – INSERT ONLY ONE NAME (8a OR 8b) – Do Not Abbreviate or Combine Names**

| 8a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **8b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

**9. CHANGED (NEW) OR ADDED INFORMATION: – INSERT ONLY ONE NAME (9a OR 9b) – Do Not Abbreviate or Combine Names**

| 9.a ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **9.b INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | | | **SUFFIX** |
| 9.c MAILING ADDRESS Line One | This space not available. | | | | |
| MAILING ADDRESS Line Two | **CITY** | | **STATE** | **POSTAL CODE** | **COUNTRY** |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral [ ] DELETE or [ ] ADD, or give entire [X] RESTATE collateral description, or describe collateral [ ] ASSIGN collateral
The collateral set forth in Schedule A hereto, which is incorporated by reference as part of this UCC Financing Statement.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 11a. ORGANIZATION'S NAME ACG Capital Company, LLC | | | |
|---|---|---|---|
| **11b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

| 12. OPTIONAL FILER REFERENCE DATA Wolfgang Roth | 192177 |
|---|---|

| STANDARD FORM - FORM UCC-3 (REV.05/2013) | Filing Office Copy | Approved by the Secretary of State, State of Florida |
|---|---|---|

SCHEDULE A TO UCC-1 FINANCING STATEMENT
DEBTORS:  WOLFGANG ROTH
WOLFGANG ROTH & PARTNERS FINE ART, L.L.C.

All rights, title and interest of Debtors in and to the following property, whether now owned or hereafter acquired or arising and wheresoever located: (a) the inventory, equipment and goods (the "Artwork") listed below; (b) all accounts, contract rights, general intangibles, letters of credit, letter of credit rights (whether or not the letter of credit is evidenced by a writing), supporting obligations, instruments (including promissory notes), chattel paper (whether tangible or electronic), documents, notes, documents of title, and commercial tort claims that are related in any way to the Artwork; (c) all rights to copy, license, sell or otherwise transfer the Artwork or images of the Artwork; (d) all copyrights, trademarks, copyright, trademark or service mark registrations, copyright, trademark or service mark applications relating to the Artwork, and (i) all registrations that issue therefrom and all renewals thereof, (ii) all income, royalties, damages and payments now or hereafter due or payable with respect thereto, including damages and payments for past or future infringements thereof, (iii) the right to sue for past, present and future infringements thereof, and (iv) all rights corresponding thereto throughout the world (the items described in this clause (d) are, collectively, referred to herein as the "Marks"); (e) the goodwill of Debtors' business connected with and symbolized by the Marks; (f) all of Debtors' rights and obligations pursuant to its licenses and other agreements with any other Person or Persons with respect to any Marks; (g) all insurance proceeds of or relating to any of the foregoing; (h) all books and records relating to any of the foregoing; and (i) all accessions and additions to, substitutions for, and replacements, products and proceeds of any of the foregoing.

### THE ARTWORK

1. Beard, Peter 1938
   Portraits London, ( F.Bacon ) , Paris , Nairobi
   Collected at Hog Ranch 1960-70
   Unique gelatin silver print and color print, collage
   With ink and blood handwork
   183,3 x 127 cm (73,6 x 50,8 inch)
   Signed, titled, dated and annotated in ink
   Prov: Time is always now Gallery, New York

2. Ford, Walton 1960
   **" Guilty Elephant 1994 "**
   Oil on panel, signed , titled and dated reverse
   63 x 46 inch (160 x 117 cm)
   Prov: Paul Kasmin Gallery , New York
   Acquired by the present owner from the above

3. Lichtenstein, Roy 1923 – 1997
   Sketch and Study for Still Life with Portrait, 1973

1

Graphite and Colored pencil on Paper
Signed and dated 73 / verso
4 11/16 x 7 15/16 inch (12,5 x 20 cm)
Catalogue # Moma 1985.813
Prov: Private Collection, New York (last 35 Years Loan to the Museum of Modern Art )
Exhib: The Drawings of R.Lichtenstein / Mar. 15 – June 02. 1987 / Moma , New York
Lit: The Drawings of R.Lichtenstein , Bernice Rose , Catalogue by Elisabeth
Richebourg Rea, Harry Abrams and Moma 1987, No. 118 , page 188

4. **Lachapelle , David 1964**
   **" Cathedral , Los Angeles " 2007**
   **Digital color coupler print , 48 1/2 x 65 3/4 inch ( 123,2 x 167 cm )**
   **Signed on an artist label / Verso**
   **Edit. 7/7**
   **Prov: Acquired directly from the artist**
   **Private collection , UK**

5. **Essenhigh , Inka 1969**
   **" Mass Suicide from Special Forces # 2 , 1997 "**
   **Oil Enamel on Canvas**
   **Signed , titled and dated 1997 / Verso**
   **54 x 60 inch ( 137,2 x 152,4 cm )**
   **Prov : Stefan Stux Gallery , New York**
   **Exhib : New York / Exit Art Wild , Jan. 17 – Mar. 29. 1998**

6. Kabakov, Ilya 1933
   Look at Her, April 1982
   Oil on Enamel on Masonite
   44 x 80 inch (110 x 200 cm)
   Signed, dated on reverse –- Kabakov 82 and Archiv No. 61
   Prov: Collection Dina Vierny , Paris
   Exhib: Museum of Modern Art, New York / Oct. 1991 – Jan. 1992
   Annandale on Husdon / Center for Curatorial
   Ilya Kabakov 1969 – 1998 / Jun. – Sep. 2000
   Lit: Ilya Kabakov / Catalogue Raisonnee, Vol. I / Paintings 1969 – 1998
   No. 74, Page 143 (Archiv No. 61)

7. Otto Piene
   Mondgesicht, 2000
   Mixed media on canvas
   23,6 x 19,9 inches

8.  Piene, Otto
    Feuerbild, 1980
    Oil on screen
    27,55 x 35,43 inches (70 x 50 cm)

9.  Warhol , Andy 1928
    **" Blotted Line 1956 "**
    Mixed Media and Watercolour on heavy paper , 1956
    19,3 x 13,4 inch ( 49 x 34 cm )
    Prov : Collection Prof . Reiner Crone / Munich
    Gift of the artist to Prof. Rainer Crone
    Exhib: Warhol Retrospective , Berlin 2001/2 / page 16 / Heiner Bastian

10. Warhol , Andy 1928
    **" Blotted Line 1956 " Signed lower right**
    Mixed Media and watercolour on heavy paper , 1956
    19,3 x 13,4 inch ( 49 x 34 cm )
    Prov : Collection Prof. Rainer Crone / Munchen
    Gift of the artist to Prof. Reiner Crone
    Exhib: Warhol Retrospective, Berlin 2001/2 page 16 / Heiner Bastian

11. **Rolex Daytona 1976**
    **Mint condition  / Last service Rolex Wempe 2012**
    **Case/Ref° 6263**
    **Prov : Private Collection Berlin**

12. Rolex Daytona – Paul Newman
    Extremly rare Stainless Steel – Red outer ring-- lever Movement Calibre
    722-1 /
    Referenz 6262
    Case numbered 2621529 --- 1969
    Certificate by the Company Wagner / Rolex license holder/ Vienna
    enclosed
    Watch is in perfect condition

13. Matta, Roberto (1911 – 2002)
    Libertà, 1967/68
    Oil on Canvas
    28 x 42 inch (69 x 105 cm)
    Monogram Lower right
    Prov : Galleria Annunciata , Milan  , ( Label on verso)
    **Galleria d'Arte il Castello , Milan ( Label on verso )**
    **Galleria d'Arte Cafiso , Mila**n
    European Private Collection
    **Photo Certificate : Archives de 'Oeuvre de Matta , Paris ,**
    21. December 2009

14. Fontana , Lucio 1899 – 1968
**" Concetto Spaziale – Natura 1967 / Signed and numbered on the Bottom "**
Nr. 346 / 500 Polished Bass 11 x 8,8 x 8,8 inch ( 27 x 22 x 22 cm )
Prov: Privat Collection Italy
Exhib: Tokio Lucio Fontana, Spatial Cenception , Tama University 1990 ,
page 71
Lit : Lucio Fontana , H,Rigo , C.Ruhe , Reverdito 2007 , Page 139 , B-2
Prov : German Privat Collection
Both pieces are in mint condition

15. Robert Indiana
Numbers from 9 to 0
10 pieces, dimensions variable

16. Piene , Otto 1928 – 2014
**" Spanische Sahara " 1975**
Oil , Mixed Media on canvas / Verso : Signed , dated 75 and Titled
27 x 39 inch ( 67 x 97 cm )
Prov: Galerie Schoeller , Dusseldorf , Germany
Private Collection, purchased from above in the 70s

17. Rolex Daytona – Paul Newman ca.1969
Cosmograph – Steel
Caliber 722-1 / Case No. 2003057 , Ref. 6239
Very rare – white with red outer ring.
Watch has papers from Wagner / Vienna Rolex Dealer
Watch in mint condition

18. Rolex Daytona Oyster Cosmograph ca. 1980
Gold 18ct.
Calibre 727 / Ref. 6265 – Case No. 6899574
Ca . 36 mm
Watch in in mint condition

19. **Sean Scully**
**Landline Highline, 2015**
**Oil on linen**
**215,9 x 190,5 cm**

20. **Ivan Navarro**
**Nothing will come of nothing, 2015**
**Neon, LED lights, aluminum, wood, paint, mirror, one-way mirror and electric energy**
**60 x 60 x 12 inches**

Edition 2 of 3

21. Xavier Lalanne
" Set of 5 , Male , Female plus 3 small sheep / Flock of sheep",  1997
Bronze , and Epoxy Stone
Variable dimensions
Edit. of 250