UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.  16-cv-24570-RNS

**KIMBERLY BLAKE-ROTH**, an individual,

Plaintiff,

vs.

**WOLFGANG ROTH**, an individual,
**WOLFGANG ROTH & PARTNERS, FINE
ART, LLC**, a Florida limited liability
company, **ACG CAPITAL COMPANY,
LLC**, a Delaware limited liability company
**MODERN ART SERVICES, LLC**, a
Delaware limited liability company, **IAN
PECK**, an individual, and **346 NW 29th
STREET, LLC,** a Florida limited liability
company **d/b/a MUSEO VAULT,**

Defendants.

_____/

## PLAINTIFF'S MOTION TO REMAND TO
## STATE COURT AND OBJECTION TO REALIGNMENT

Plaintiff Kimberly Blake-Roth ("Plaintiff" or "Blake-Roth") files the following motion to

remand these proceedings to the Circuit Court of Miami-Dade, Florida where it was initially and

properly filed. The gravamen of Plaintiff's claims emanate from her marital and beneficial interests

in certain works of art and valuable Rolex watches. Not only is there a lack of diversity among the

parties, but the Court should also remand under the federal doctrine of abstention from "domestic

relations" matters. Defendants ACG Capital Company, LLC ("ACG"), Modern Art Services, LLC

("Modern Art"), and Ian Peck ("Peck) (collectively "Removing Defendants") allege that the Court

has diversity jurisdiction over these claims once three purportedly fraudulently joined parties -

Wolfgang Roth ("Roth"), Wolfgang Roth & Partners, Fine Art, LLC (the "Fine Art") and 346 NW

29th Street, LLC d/b/a Museo Vault ("Museo Vault") are excluded for purposes of determining diversity. By claiming fraudulent joinder, Removing Defendants tacitly admit the Court lacks jurisdiction over these claims if any one of defendants Roth, Fine Art or Museo Vault were properly joined. Under the Federal Rules of Civil Procedure, defendants Roth and Fine Art are both necessary and properly aligned defendants to Counts I and II of the complaint, seeking declaratory judgment. Thus, their joinder cannot be fraudulent. Museo Vault is also a necessary party to Counts I and II because it is holding the property at issue under a bailment agreement, and must further be named because the Plaintiff seeks relief against them, including interim injunctive relief. Moreover, the Court should consider the proposed Second Amended Complaint attached to Plaintiff's Motion for Leave to Amend Complaint to resolve any regarding about Plaintiff's claims and party designations. [D.E. 14-1]. Accordingly, removal is not proper and the case should be remanded as a matter of law.

Additionally, expedited review of the motion is requested because the improper removal by the Removing Defendants was effectuated to hinder the temporary injunction and expedited discovery order that had been entered in the state court proceedings [D.E. 5-14], intended to safeguard unique personal property and art valued in excess of $2,000,000 from removal from the State of Florida.  In addition, and as more thoroughly described below, defendant Roth is currently suffering from Stage IV brain cancer, with an unknown prognosis.  That condition creates grave concern for Plaintiff because until the summer of 2016, was not materially involved in defendant Roth's business affairs, which include defendant Fine Art. In the event defendant Roth's condition continues to decline, or if he were to pass, Plaintiff's ability to collect information and prosecute and/or defend these claims would be seriously undermined, if not entirely prejudiced.

## STATEMENT OF FACTS

The following facts are alleged in the complaint[1] and must be taken as true for the purposes of this motion to remand.[2]

At all times material to the complaint, defendants Roth and Fine Art have been, and continue to be, citizens of the State of Florida. (Am. Compl. ¶¶1-2, 4). On June 15, 2010, Plaintiff married defendant Roth in Miami-Dade County, Florida. (Am. Compl. ¶15). At that time, defendant Roth had a fifty percent (50%) interest in defendant Fine Art, a Florida limited liability company, which operated an art gallery and brokered art and other collectibles. (Am. Comp. ¶16). After Plaintiff and defendant Roth married, all of defendant Roth's interest in defendant Fine Art became marital property. (Am. Compl. ¶17). Thereafter, defendant Roth acquired the remaining fifty percent (50%) interest in defendant Fine Art from its co-member, which was then held in trust for the benefit of Plaintiff. (Am. Compl. ¶18). On April 12, 2013, and every year thereafter, defendant Fine Art designated Plaintiff as a co-managing member on its annual report with the Florida Department of State, Division of Corporations. (Am. Compl. ¶18).

Unbeknownst to Plaintiff, in or around October 2015, defendant Roth had developed Stage IV Glioblastoma Multiforme (GBM), a form of brain cancer. (Am. Compl. ¶19). In the months

---

[1] The complaint was amended on October 4, 2016. [D.E. 5-5]. Accordingly, all references to the complaint, and discussion herein, will refer to the amended complaint.

[2] *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994) (holding that "plaintiff's claim, when it is specific and in a pleading signed by a lawyer, deserves deference and a presumption of truth"); *see also Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (holding that for purposes of remand "the district court must focus on the plaintiff's complaint at the time the petition for removal was filed . . . [and] must assume as true all factual allegations of the complaint"); *Deuley v. DynCorp Int'l, Inc.*, 588 F. Supp. 2d 539, 542 (D. Del. 2008) (same); *Wilkinson v. Jackson*, 294 F. Supp. 2d 873, 877 (S.D. Miss. 2003) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff."); *Kimmel v. Bekins Moving & Storage Co.*, 210 F. Supp. 2d 850, 852 (S.D. Tex. 2002) (holding that when considering a "motion to remand, the Court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in the plaintiff's favor").

following the development of his brain cancer, specifically December 2015 and January 2016, defendant Roth was engaged in negotiations with defendant Peck for a loan of up to $2,000,000. (Am. Compl. ¶20).

In early January, 2016, defendant Peck provided defendant Roth with (i) a proposed Loan and Security Agreement for $2,000,000.00 Senior Credit Facility, among defendants Roth, Fine Art, Modern Art and ACG ("Loan Agreement") and (ii) an Arranger Agreement among defendants Modern Art, Roth and Fine Art ("Arranger Agreement"). (Am. Compl. ¶21). Ultimately, both the Loan Agreement and Arranger Agreement were signed in Florida. (Am. Compl. ¶21).  Peck owns and/or controls both ACG and Modern Art. (Am. Compl. ¶7 at n. 1).

As security for the Loan Agreement, defendant Roth, without capacity, or consent from Plaintiff, pledged twelve (12) items of marital property comprised of two Rolex watches, and ten works of art (collectively the "Collateral").[3] (Am Compl. ¶¶12, 22, 41-44). The Collateral was identified in a letter dated January 26, 2016 and executed by the parties (including Ms. Ludovica Capobianco, on behalf of ACG), in Miami-Dade County, Florida. (Am. Comp. ¶23, 24, Ex. "A"). Although that defendant Roth had not yet drawn upon the $2,000,000 credit facility, on January 29, 2016, ACG recorded a UCC-1 financing statement in Florida claiming a security interest in *eighteen (18)* items, despite the fact that the Collateral had been limited to twelve (12) specific

---

[3]As identified in the complaint, defendant Roth pledged (i) Peter Beard, "Portraits of London, Francis Bacon, Paris, Nairorbi, Collected at Hog Ranch" 1960-1970; (ii) Inka Essenhigh, "Mass Suicide From Special Forces #2," 1997; (iii) Ilya Kabakov, "Look at Her" April 1982; (iv) David LaChapelle, "Cathedral" C Print, 2007; (v) Roy Lichenstein, "Sketch and Study for Still Life with Portrait," 1973 (vi) Otto Piene "Feuerbid" 1980; (vii) Otto Piene, "Mondgesicht" 2000 (viii) Andy Warhol, "Blotted" 1956. (1 of 2); (ix) Andy Warhol, "Blotted Line" 1956 (2 of 2); (x) Walton Ford, "Guilty Elephant" 1994; (xi) Rolex Daytona Watch, 1976 Paul Newman; (xii) Rolex Daytona Watch, 1969, Paul Newman.

items. Am. Compl. ¶25. Among the six additional items claimed by defendant ACG are items in which defendants Roth or Fine Art did not have any ownership interest.[4] (Am. Compl. ¶26).

In or around March, 2016, defendant Roth, still without capacity or Plaintiff's consent, sought to draw an additional $750,000.00 (the "second tranche") from the $2,000,000.00 credit facility. Am. Compl. ¶¶27-28. Defendant Roth intended to pledge three (3) additional items to secure the second tranche of the loan (collectively referred to as the "Three Items")[5] Am. Compl. ¶28. However, as a result of defendant ACG's unexplained delays, and ultimate failure to fund the second tranche, defendant Roth rescinded his request on June 22, 2016. (Am. Compl. ¶30, Ex. "C").

As alleged in the complaint, the effect of the Glioblastoma Multiforme deprived defendant Roth of legal capacity to enter into any enforceable agreements, including the Loan Agreement, Arranger Agreement and most notably, the failed second tranche, either on his own behalf, or on behalf of defendant Fine Art. (Am. Compl. ¶31). Undeterred by the lack of an executed security agreement or defendant ACG's failure to fund the second tranche, on June 24, 2016 (two days *after* defendants Roth and Fine Art *rescinded* the second tranche), defendant ACG filed what purports to be a UCC-3 financing statement amendment, amending the earlier Florida UCC filing, to now include a total of *twenty-one* (21) items. (Am. Compl. ¶32).

---

4 The additional works improperly identified on the January 29, 2016 UCC-1 include the Robert Indiana Numbers 0-9 (number 15 on the UCC-1), "Liberta" by Roberto Matta (number 13 on the UCC-1), "Concreto Spaziale – Natura 1967" by Lucio Fontana (number 14 on the UCC-1, the "Spanische Sahara" by Otto Piene (number 16 on the UCC-1), and two rare Rolex watches. The market value of these additional items is in excess of $2,000,000.

5As described in the complaint, the Three Items are (i) Sean Scully, "Landline Fire", 2015, Oil on linen (215.9 cm x 190.5 cm) (the "Scully"); (ii) Xavier Lalanne, "Set of 5, Male, Female plus 3 small sheep/ Flock of Sheep", 1997, Bronze & Epoxy Stone (various dimensions) (the "Lalanne"); (iii) Ivan Navarro, "Nothing will come of nothing", 2015, Neon, LED lights, aluminum, wood, paint, mirror, and other various materials, 60" x 60" x 12" (the "Navarro"). It is important to note that $530,000.00 of the proceeds from the "second tranche" were to be paid to Kewenig Gallery in Berlin, Germany, who continues to own the Sully due to the lack of payment.

Then, on July 21, 2016, without any signed or delivered documents, defendant ACG again filed a third UCC (in New York), wrongfully asserting a security interest in *twenty-one* (21) items, which at the time, were overwhelmingly[6] situated in Miami-Dade County, Florida. (Am. Compl. ¶33). By the time Plaintiff filed the complaint, (six (6) months after defendant Roth inquired about a second tranche), defendant ACG had not paid a single penny of the failed $750,000.00 second tranche, or any portion thereof, to defendants Roth, Fine Art, or anyone on their behalf. (Am. Comp. ¶34).

On September 28, 2016, Blake-Roth filed a five (5) count complaint in the Eleventh Judicial Circuit Court, Miami-Dade County, Florida, Case No. 2016-024867-CA01 (34), captioned *Kimberly Blake-Roth vs. Wolfgang Roth, Wolfgang Roth & Partners, Fine Art, LLC, ACG Capital Company, LLC, Modern Art Services, LLC, Ian Peck and 346 NW 29th Street, LLC d/b/a Museo Vault.* [D.E. 5-3] asserting the following claims:

> In Count I, plaintiff Blake-Roth seeks a *declaratory judgment* that *defendant Roth* lacked legal capacity and authority to enter into the Loan Agreement and the Arranger Agreement (as described in the complaint);
>
> In Count II, plaintiff Blake-Roth seeks a *declaratory judgment* that the Loan Agreement and Arranger Agreement (executed by *defendants Wolfgang Roth, Wolfgang Roth & Partners, Fine Art, LLC, ACG Capital Company, LLC and Modern Art Services, LLC* as described in the complaint) are unenforceable as a matter of law because they are criminally usurious;
>
> In Count III, plaintiff Blake-Roth alleges *criminal fraud* (Fla. Stat. §817.535(2)) against *defendants ACG Capital Company, LLC, Modern Art Services, LLC and Ian Peck*;
>
> In Count IV, plaintiff Blake-Roth alleges *Florida's Deceptive and Unfair Trade Practices Act* ("FDUTPA"), (Florida Statute §§ 501.201-501.2013) against *defendants ACG Capital Company, LLC, Modern Art Services, LLC and Ian Peck*;

---

[6] Approximately 15 of those items were located in Florida.

> In Count V, plaintiff Blake-Roth alleges *civil conspiracy* against *defendants ACG Capital Company, LLC, Modern Art Services, LLC and Ian Peck*.

Most relevant to this Court's consideration of defendants ACG, Modern Art and Peck's notice of removal [D.E. 1] and request to realign the parties, Plaintiff seeks a declaration that defendant Roth was incompetent when he entered into the Loan Agreement and Arranger Agreement and a declaration that the Loan Agreement and Arranger Agreement are unenforceable because they are criminally usurious.

Due to assertions concerning specificity, on November 29, 2016, Plaintiff filed her Motion for Leave to Amend Complaint, naming all of the same defendants, asserting the following additional claims (i) violation of marital, contractual and beneficial rights in marital property against defendants Roth and Fine Art, and (ii) a judgment for damages against *Museo Vault* for failing to fulfill its obligations to protect the Collateral and the Three Items.

## SUMMARY OF ARGUMENT

The notice of removal [D.E. 1] filed by defendants ACG, Modern Art and Peck is yet another in a series of surreptitious efforts to deny Plaintiff her fundamental rights in the property at issue and circumvent due process by absconding with property that belongs to Plaintiff, or in which she has an undivided 50% interest. It is both procedurally and substantively without merit. Despite actual knowledge of Plaintiff's interest and claim to the property, defendants ACG, Modern Art and Peck, have caused property worth well in excess of $1,000,000 (including unique items such as Paul Newman's Rolex watch and art works by Andy Warhol, Ilya Kabakov, Roy Lichtenstein and David La Chappelle), to be removed from Miami, Florida to New York City, New York.

The centerpiece of Plaintiff's complaint are the first two counts seeking declaratory judgment against defendants Roth, Fine Art, ACG and Modern Art.[7] Each of these defendants have rights which will necessarily be affected by a court order and are thus necessary parties as defined by the Federal Rule of Civil Procedure 19. It is undisputed that Roth is a citizen of Florida, while defendant Fine Art is an entity organized under the laws of Florida with a principal place of business in Miami, Florida.[8] Defendant Fine Art is wholly owned by defendant Roth, but fifty percent (50%) of that interest is held directly for Plaintiff's beneficial interest. Thus defendant Fine Art is considered a citizen of Florida. 28 U.S.C. § 1332(c); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). Similarly, Museo Vault is also an entity organized under the laws of Florida, having its principal place of business at 346 N.W. 29th Street, Miami, Florida. Its ownership structure is unknown and not set forth in any of the pending pleadings, nor Notice of Removal.

If Roth, Fine Art or Museo Vault are properly joined as defendants diversity jurisdiction is destroyed and the case should be remanded as a matter of law.

### A.      General Jurisdictional Principles

"It is by now axiomatic that the [district] courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir.1999) (*quoting Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994)). "Accordingly, '[w]hen a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional

---

[7] Contrary to the assertions of defendants ACG, Modern Art and Peck, defendant Museo Vault has been named as an obvious and necessary party because the Three Items are currently being warehoused at the Museo Vault facility.

[8] See Annual Report of Wolfgang Roth & Partners, Fine Art, LLC filed with the Florida Department of State, Division of Corporations.

precept of limited federal power.'" *Univ. of S. Ala.*, 168 F.3d at 409 (*quoting Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212, 92 S.Ct. 418, 425 (1971)). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala.*, 168 F.3d at 410.

Moreover, "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party could 'work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them.'" *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000–01 (11th Cir.1982) (*quoting American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18, 71 S.Ct. 534, 542 (1951)) (footnote and citation omitted). Furthermore, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411 (*citing Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 872 (1941)). In accord with a strict analysis, all doubts must be resolved in favor of remand.  *See Univ. de Perez of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998).

Congress has decreed and the Supreme Court has confirmed that orders of remand by district courts based upon certain grounds, including in particular those premised upon lack of subject matter jurisdiction, are entirely insulated from review. Specifically, § 1447(d) provides:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 [civil rights cases] of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d) (emphasis added); *see also Kircher v. Putnam Funds Trust*, 547 U.S. 633, 642, 126 S.Ct. 2145, 2154 (2006) (recognizing that "'[w]here the [remand] order is based on one

of the grounds enumerated in 28 U.S.C. § 1447(c), review is unavailable no matter how plain the legal error in ordering the remand'" (*quoting Briscoe v. Bell*, 432 U.S. 404, 413 n. 13, 97 S.Ct. 2428, 2434 n. 13 (1977))).

Lastly, the burden of alleging and proving diversity jurisdiction again rests upon the removing defendant(s). *Leonard v. Enter. Rent a Car,* 279 F.3d 967, 972 (11th Cir. 2002)(the "removing defendant that bears the burden of proving proper federal jurisdiction."); *Burnette v. Regions Bank*, 5:15-CV-567-OC-32PRL, 2016 WL 1644182, at *1 (M.D. Fla. April 26, 2016)("As the parties seeking removal, defendants bear the burden of establishing federal jurisdiction."); *H.B. Realty Corp. v. Scorpion Marine Sales & Servcs., Inc.,* 6"12-CV-1029-ORL-28, 2013 WL 1155811, at *1 (M.D. Fla. Mar. 14, 2013)(stating that diversity must be alleged with "particularity").

When determining whether removal was proper, the district court considers "only the limited universe of evidence available when the motion to remand is filed – i.e., the notice of removal and accompanying documents[, and] if that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Lowrey v. Ala. Power Co.,* 438 F.3d 1184, 1213-15 (11th Cir. 2007), *cert. denied,* 553 U.S. 1080, 128 S.Ct. 2877 (2008).

**B.**   **Diversity Jurisdiction**

Where the alleged basis for federal jurisdiction is diversity under 28 U.S.C. §1332, the removing defendant has the burden of demonstrating (1) *complete diversity of citizenship* and (2) an amount in controversy greater than $75,000.00. *See* 28 U.S.C. §1332(a); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir.2001)(emphasis supplied). Because the amount in controversy exceeds the jurisdictional minimum, that aspect is not in dispute; the issue in this case is whether

the Removing Defendants have demonstrated complete diversity of citizenship in their Notice of Removal. *See* Notice of Removal ¶18.

However, "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of [title 28] may not be removed if *any* of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. §1441(b)(2). In addition, where an action is removed under section 1441, the removing defendant shall indicate, in its notice of removal that all properly joined defendants "join or consent to the removal of the action."  28 U.S.C. §1441(b)(2).

Here, the Removing Defendants' request that this court re-align the parties is premised upon a loosely articulated claim of "identical interests" between Plaintiff and defendants Roth and Fine Art. [D.E.-1 at ¶35] ("both are attempting to reduce or eliminate the collection amounts sought by the Removing Defendants….". See [DE-1 at ¶36][9] In an attempt to gain the very relief sought in their Notice of Removal, the Removing Defendants failed to solicit the consent of the non-removing defendants or even address the consent requirement, which is but one of many defects which require that this case be remanded back to state court.

### 1.    *Citizenship Requirement*

Diversity jurisdiction "requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1564 (11th Cir.1994). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994). As citizenship relates to an "entity" defendant, the removing party must identify whether the entity is incorporated or

---

[9] The Removing Defendants' argument that Plaintiff cannot p*rove* a cause of action against the Roth Defendants should be disregarded because the standard of review is not ultimate success of the claim but whether a colorable claim has been alleged, and moreover, the Court should review Plaintiff's proposed Second Amended Complaint, which clarifies allegations against certain defendants.

unincorporated as well as "every State and foreign state by which it has been incorporated and []the State or foreign state where it has its principal place of business…" 28 U.S.C. §1332(c)(1). *See also Tomasini v. Stryker Corp. of Michigan,* No. 09-60 344-CIV, 2009 WL 595932, at *1 (S.D. Fla. Mar. 6, 2009)("[T]he facts showing the existence of jurisdiction must be affirmatively alleged."). If the entity defendant is to be treated an unincorporated entity, the removing party must allege the citizenships of each of its members. *See Rolling Greens XHP, L.P. v. Comcast SCH Holdings, L.L.C.,* 374 F.3d 1020(11th Cir. 2004)(holding that a limited partnership, a limited liability company is a citizen of any state of which a member of the company is a citizen). When parties dispute jurisdiction, uncertainties are again to be resolved in favor of remand. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1094 (11th Cir. 1994).

Here, Removing Defendants have failed to satisfy their strict burden of demonstrating complete diversity. While it is undisputed that Plaintiff, Roth, and Fine Art, are citizens of Florida due to the location of each principal place of business and citizenship of its members, the Removing Defendants fail to allege the citizenship of the membership of ACG and Modern Art.[10] Notice of Removal ¶29. The Removing Defendants have also failed to allege the citizenship of Museo Vault. In turn, under the binding principles which govern the instant analysis, those failures are to be construed against removal and in favor of remand.

### 2.   *Proper Parties*

Federal Rule of Civil Procedure, Rule 19 provides that a party "*must* be joined" if that person's absence would preclude the court from awarding complete relief or "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence *may* (i) as a practical matter impair or impede the person's ability to protect the

---

[10]

interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest,"  Rule 19(a)(1)(A)-(B), Fed. R. Civ. P. (emphasis supplied).

In this case, there is no doubt that Roth, Fine Art and Museo Vault are all proper defendants to this action. First, there can be no question that defendants Roth and Fine Art's interests are implicated in the pending, and proposed complaint and that their interests are absolutely adverse to those of the Plaintiff. [D.E. 5-5, 14-1] Second, the findings which are to be made in the instant case will unquestionably touch upon the legal rights and defenses of the parties, in litigation pending elsewhere, or litigation which is likely to arise in the near future. If a party were to be excluded from this action, those rights and defenses would be prejudiced in the other litigation matters.

Under the applicable rules and principles of judicial economy, all of the defendants are necessary defendants to the instant claims and properly joined as such.

### 3.      *Fraudulent Joinder Principles*

"In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court."  *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997)(citing *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989)). In this case, defendants ACG, Modern Art and Peck claim that Plaintiff has fraudulently joined Roth and Fine Art as defendants in her declaratory judgment action in order to preclude complete diversity.[11]

---

[11] Actually, defendants ACG, Modern Art and Peck make the wild argument that "[Plaintiff]'s joinder of non-diverse 'defendants' should be disregarded for what it is: a fraudulent effort to prevent removal of the case to the federal system, where it can be transferred to the SDNY and consolidated with the already-pending, first filed case before Judge Castel." Certainly, after remand back to the state court, defendants

Defendants ACG, Modern Art and Peck do not dispute that defendants Roth and Fine Art are citizens of Florida. The Removing Defendants also do not appear to dispute that Museo Vault is a citizen of Florida (although they failed to *properly* allege its citizenship). Notice of Removal ¶31 ("the proper joinder of Museo Vault as a defendant would defeat complete diversity."). In turn, and for the reasons set forth below, defendant ACG, Modern Art and Peck's argument in support of realignment is wholly without merit and ignores the literal and practical implications of Plaintiff's request for declaratory judgment as well as the limitations on the court's ability to realign the parties because of the mere "perception" of a potentially shared benefit.

It is well settled that the removing party has the burden of proving that "*there is no possibility the plaintiff can establish a cause of action against the resident defendant[s]* ". *Crowe*, 113 F.3d at 1538 (internal citations omitted)(emphasis supplied). "Where a plaintiff can state *even a colorable claim against the resident defendant*, joinder is proper and the case should be remanded to state court," *Id*(citing *Crowe,* 113 F.3d at 1538 and *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1153, 1561 (11th Cir. 1989))(emphasis supplied).

The standard is onerous because, absent fraudulent joinder, a plaintiff has the absolute right to choose her forum. *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1097 (11th Cir.1994)(stating that the Plaintiff is the master of her own claim, and as such, the Plaintiff's right to choose her forum and further stating that defendant's right to remove are not equal to plaintiff's choice of forum rights).

As the Court in *Crowe* further recognized:

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Parks v. The New York Times Co.*, 308

---

can make their argument and seek to have the matter stayed pending resolution of the proceedings in New York.

> F.2d 474, 478 (5th Cir.1962). The strict construction of removal
> statutes also prevents "exposing the plaintiff to the possibility that
> he will win a final judgment in federal court, only to have it
> determined that the court lacked jurisdiction on removal," *see
> Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.*, 507 F.Supp.
> 740, 744 (S.D.Ga.1981) (quoting 14A C. Wright, A. Miller & E.
> Cooper, Federal Practice and Procedures § 3721), a result that is
> costly not only for the plaintiff, but for all the parties and for society
> when the case must be re-litigated.

*Crowe*, 113 F.3d at 1538. To establish fraudulent joinder of a resident defendant, the burden of

proof on the removing party is a "heavy one[,]" see *Crowe*, 113 F.3d at 1538, requiring clear and

convincing evidence and particularity in pleading. *Parks*, 308 F.2d at 478.The court must not

undertake to decide the merits of the claim but must look to whether there is a possibility that a

claim exists. More particularly, the court in Crowe explained the framework for analyzing

fraudulent joinder:

> While 'the proceeding appropriate for resolving a claim of
> fraudulent joinder is similar to that used for ruling on a motion for
> summary judgment under Fed.R.Civ.P. 56(b),' [*B. Inc., v. Miller
> Brewing Co.*, 663 F.2d 545, 549 n. 9 (5th Cir., Unit A 1981) ], the
> jurisdictional inquiry 'must not subsume substantive determination.'
> *Id.* at 550. Over and over again, we stress that 'the trial court must
> be certain of its jurisdiction before embarking upon a safari in search
> of a judgment on the merits.' *Id.* at 548–49. When considering a
> motion for remand, federal courts are not to weigh the merits of a
> plaintiff's claim beyond determining whether it is an arguable one
> under state law. *See id.* 'If there is even a possibility that a state court
> would find that the complaint states a cause of action against any
> one of the resident defendants, the federal court must find that
> joinder was proper and remand the case to state court.' *Coker v.
> Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir.1983),
> superseded by statute on other grounds as stated in *Georgetown
> Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir.1993).

*Crowe*, 113 F.3d at 1538 (emphasis added). The Eleventh Circuit later elaborated on fraudulent

joinder in *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368 (11th Cir.1998):

> The fact that the plaintiffs may not ultimately prevail against the
> individual defendants because of an insufficient causal link between
> the defendants' actions and the plaintiffs' injuries does not mean that

the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis. In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.' *Crowe*, 113 F.3d at 1538.

*Id*. at 1380–81; *see also Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir.2003)

("[I]f there is a possibility that a state court would find that the complaint states a cause of action

against any of the resident defendants, the federal court must find that the joinder was proper and

remand the case to state court.").

### 4. *Plaintiff's Declaratory Judgment Action*

In this case, Plaintiff (presently) asserts two causes of action under Florida's Declaratory

Judgment Act (Fla. Stat. §§ 86.011, et seq.). As described in Count I of the complaint, in addition

to lacking legal capacity to enter into the Loan Agreement and Arranger Agreement, Plaintiff seeks

a declaratory judgment that:

- defendant Wolf lacked the authority to sell, buy, trade, encumber, pledge or otherwise deal with ***marital property***, or ***marital property*** belonging to Fine Art.

- All of the property that was alleged to have been pledged as security for the Loan Agreement and Arranger Agreement is either owned ***jointly by Plaintiff and defendant Roth, or defendant Fine Art, in which Plaintiff owns at least a 50% interest.***

- Property of that value could only be sold, bought, traded, encumbered, pledged or otherwise dealt with by mutual agreement of Plaintiff and defendant Roth.

- Pursuant to the Fine Art operating agreement between Plaintiff and defendant Roth, neither could take material actions, including entering into transactions such as the Loan Agreement and Arranger Agreement, without the express consent of the other.

[D.E. 5-5 at ¶¶ 42-45].

As described in Count II of the complaint, Plaintiff seeks a declaratory judgment that the

Loan Agreement and Arranger Agreement (executed by defendants Roth, Fine Art, ACG and

Modern Art) are unenforceable as a matter of law because they are criminally usurious. It is undisputed that defendants Roth and Fine Art never received more than $457,423.27 under the Loan Agreement and Arranger Agreement. However, defendants ACG and Modern Art have collected (or are trying to collect) at least $341,063.53 in interest and other similar type charges from defendants Roth and Fine Art. The 'loan' at issue has a one year maturity date, which would render those charges equivalent to a 74.56% annual interest rate.

In this case, defendants ACG, Modern Art and Peck seek to manufacture diversity by "realigning" the parties according to the perception that the sole purpose of the complaint is to "reduce or eliminate the collection amounts sought by the Removing Defendants and to collect damages for alleged improper UCC filings." [D.E. 1 at ¶35] Although such may be an unintended benefit to defendants Roth and Fine Art, Plaintiff's ultimate goal in these proceedings is to protect her individual interest in Fine Art and her marital property. A determination that defendant Wolf was incompetent at the time he entered into the Loan Agreement and the Arranger Agreement cannot be taken so casually as to believe that Plaintiff and defendant Roth's interests would be aligned. To the contrary, such an adjudication would be to Plaintiff's benefit and defendants Roth and Fine Art's detriment – exposing them to material damage claims. The same holds true with regards to defendant Roth's unlawful pledging of marital property, and violation of Plaintiff's interests in defendant Fine Art. In the event Plaintiff prevails in her action, and demonstrates that defendant Roth was (and perhaps continues to be) acting without authority, and is incapable of managing the daily affairs of defendant Fine Art, such determination would have far reaching effects on defendant Roth beyond this case, calling into question other agreements as well as impeding his future ability to contract. [D.E. 14-1] Because the alleged harm to Plaintiff that is at

the heart of both counts for declaratory judgment is adverse to both defendants Roth and Fine Art, they are necessary and proper party defendants in this action.

Moreover, the removing Defendants' argument that defendant Museo Vault was fraudulently joined is similarly specious. Museo Vault is a necessary party in this action because on two occasions it entered into a bailment arrangement with regard to the Collateral and the Three Items. These undertakings occurred subsequent to when Museo Vault agreed to store and secure the Collateral and, later, the Three Items. Museo Vault agreed to protect the works and release them only to authorized persons. When a dispute arose among defendants ACG, Peck, Modern Art, Roth and Fine Art, Museo Vault should have done what it said it would do and interplead the Collateral and the Three Items into Florida state court. Its failure has caused litigation throughout this country, which is likely only to continue once Kewenig becomes aware of this action, and the property unnecessarily exposed to threat of removal from the State of Florida. Next, Museo Vault again agreed to protect the Collateral and the Three Items under an agreement reached among defendants on or about September 21, 2016. In addition to its role as bailor, Museo Vault, is also currently holding the Three Items in its Miami, Florida facility. In that regard, even if Museo Vault is not liable for damages, Museo Vault is a necessary party because this action seeks, *inter alia* specific injunctive relief with regards to said Three Items. Had Plaintiff not named Museo Vault, the Florida trial court would not have been able to award interim relief over Museo Vault due to the fact that it was not named. In sum, regardless of the analysis, Museo Vault is a properly named defendant in this action.

### C.    The Court Should Abstain from Exercising Jurisdiction.

The Court should remand this matter as a matter of abstention and comity because at the heart of Plaintiff's claims are issues squarely arising under state domestic relations laws.

The federal judiciary has traditionally abstained from deciding cases that touch upon domestic relations. *See Crouch v. Couch,* 566 F.2d 486 (5th Cir. 1978). The reasons for federal abstention in such cases are apparent: the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts. *See Armstrong v. Armstrong,* 508 F.2d 348, 349-350 (1st Cir.1974); *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,* F.2d 509, 514 (2nd Cir.1973). Notwithstanding Plaintiff's cursory statements concerning jurisdiction, there can be no argument that "28 U.S.C. §1332 does not confer jurisdiction over domestic relations issues." *Gonzalez Canevero v. Rexach,* 793 F.2d 417, 418 (1st Cir. 1986)(internal citations omitted). As held by the Supreme Court in *Ex parte Burrus,* 136 U.S. 586, 593-94, 10 S.Ct. 850, 853 (1890), "[t]he whole subject of the domestic relations of ***husband and wife***, parent and child, belongs to the laws of the states, not to the laws of the United States." (emphasis supplied).  The domestic relations exception is "comprehensive" and is generally based upon "a true matrimonial relationship and encompasses the incidental rights that flow therefrom such as … ***property interests*** – rights [that are] legally enforceable by virtue of the legal status." *See Korby v. Erickson,* 55 F. Supp. 136, 138 (S.D.N.Y. 1982)(citing *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,* F.2d 509, 514 (2nd Cir. 1973); *Spindel v. Spindel,* 283 F.Supp. 797 (E.D.N.Y. 1982).  Even where claims do not fall within the traditional auspice of "domestic relations", "federal courts should abstain from adjudicating claims that are closely related to, though not within, the jurisdictional exception." *Sutter v. Pitts,* 639 F.2d 842, 843 (1st Cir. 1981). That broad notion for abstention also includes instances of "comity and common sense" from domestic relations cases which may be better handled by state courts.  *See Armstrong v. Armstrong,* 508 F.2d 348, 350 (1st Cir. 1974); *Accord Fern v. Turman,* 736 F.2d 1367

(9th Cir. 1984) *cert. denied* 469 U.S. 1210, 105 S.Ct. 1177, 84 L.Ed. 2d. 326 (1985); *Blossom v. Blossom,* 551 F.2d 474 (2d Cir. 1976).

Here, there is no dispute that the gravamen of Plaintiff's claims are grounded in concepts of marital property and interests derived consequent to the marital relationship.  *See, e.g.,* Notice of Removal ¶12 ("Kimberly's Amended Complaint alleges in paragraphs 15-17 and elsewhere that she holds a marital interest in unidentified pieces of collateral and/or a marital or trust beneficiary interest in Wolfgang's membership interests."). Indeed, all of Plaintiff's current claims, and proposed claims, emanate directly or indirectly from her marital status with defendant Roth, and her interests in Fine Art, which were acquired because of her marriage with Roth. Said in another way, were Plaintiff not married to Roth, she would likely not be able to assert the instant claims, or at least, not in the terms that they have been cast. At the heart of the matter is a determination of whether or not the property at issue (i.e., the Collateral and the Three Items (to the extent owned by Roth, Fine Art or Plaintiff)) are marital property, and if so, to adjudicate Plaintiff's rights. It is only after that determination can be made that a Court can then reach the issue of whether her consent was required before defendant Roth could directly, or indirectly through defendant Fine Art, validly enter into those agreements and pledge the property now at issue (assuming he even had mental capacity-which he did not). While the Removing Defendants may not be pleased with the inescapable fact that they failed to acquire her consent before entering into contracts concerning Florida property and subject to Florida's lending laws, their displeasure is simply not grounds for this Court to accept jurisdiction of an action which is properly in Florida state court.

## CONCLUSION

Defendants ACG, Modern Art and Peck have not met their heavy burden of demonstrating proper grounds for removal, in particular that defendants Wolf, Fine Art and Museo Vault were

fraudulently joined in this case. Indeed, the pleadings show that these are indispensable parties, and as such, this Court is without subject matter jurisdiction over the pending and proposed claims. In turn, the Court should remand this case to the Eleventh Judicial Circuit Court, Miami-Dade County, Florida, where it was initially filed and permit that Court to determine the rights of the parties, together with such other relief as the Court deems just and proper.

Dated: November 29, 2016

Respectfully submitted,

**KEITH D. SILVERSTEIN, P. A.**
200 South Biscayne Blvd., Suite 4310
Miami, Florida 33131
Telephone: (305) 868-0200
Facsimile: (305) 868-1045
keith.silverstein@gmail.com

By: ____/s/ Keith D. Silverstein_____
        Keith D. Silverstein, Esq.
        Florida Bar No. 086820
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF electronic mail notification system, via U.S. First Class Mail, postage prepaid, on this 29 day of November, 2016, upon all parties as set forth on the attached service list and in the manner set forth thereunder.

_____/s/ Keith D. Silverstein_____
Keith D. Silverstein, Esq.
Florida Bar No. 086820

## **CM/ECF SERVICE LIST**

CM/ECF