UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| KIMBERLY BLAKE-ROTH, | § § | Case No. 1:16-CV-24570 |
| Plaintiff, | § § | ORAL ARGUMENT REQUESTED |
| v. | § § | |
| WOLFGANG ROTH, et al., | § § § | |
| Defendants. | § | |

**ACG CAPITAL COMPANY, LLC, MODERN ART SERVICES, LLC, AND IAN PECK'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND [Dkt. 16] AND TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND [Dkt. 14]
AND
CROSS-MOTIONS TO DISMISS OR SEVER MUSEO VAULT
AND TO TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK**

Defendants ACG Capital Company, LLC ("ACG"), Modern Art Services, LLC ("MAS" or "Modern Art"), and Ian Peck ("Peck") (collectively, "Removing Defendants") respectfully submit this memorandum in opposition to Plaintiff's Amended Motion To Remand To State Court And Objection To Realignment (the "Motion To Remand") [Dkt. 16] and Plaintiff's Motion For Leave To Amend Complaint [Dkt. 14] and in support of their cross-motions to dismiss or sever 346 NW 29th Street, LLC d/b/a Museo Vault ("Museo Vault") as a party and to transfer the case to the Southern District of New York under the first-filed rule, as follows:

///

///

///

///

**I.      SUMMARY OF REQUESTED RELIEF[1]**

Removing Defendants oppose the Plaintiff's motions to remand and to amend. Removal is proper when the parties are realigned based on their actual interests in the case and not Kimberly's unilateral decision to list everyone as a "defendant." Kimberly's request for leave to plead new claims against the Borrowers and Museo Vault based on the outcome of the Borrowers' litigation with the Removing Defendants should be denied for what it is: a too-little-too-late attempt to bolster Kimberly's fraudulent effort to keep the first-filed SDNY case from moving forward.

Because the same sets of facts and circumstances that warrant a denial of the Motion To Remand and Motion To Amend warrant additional relief, Removing Defendants also submit this memorandum to support their motions to: (1) either dismiss Museo Vault as a defendant without prejudice or sever Plaintiff's claims against Museo Vault from this case into a new case and remand the new case; and (2) transfer this case to the Southern District of New York so that it can be consolidated with a first-filed pending action arising out of the same loan agreements, transactions, and occurrences as this case.

**II.     NATURE AND STAGE OF PROCEEDINGS**

This is a fine-art secured lending case. The lending relationship is governed by a Loan and Security Agreement ("LSA"), Arranger Agreement, promissory note, and related loan documents between ACG as "Lender," MAS as "Arranger," and Wolfgang Roth ("Roth") and Wolfgang Roth & Partners Fine Art, LLC ("WRP") as "Borrowers." The agreements specify that

---

[1] Defendant Peck's Answer asserts an affirmative defense of lack of personal jurisdiction. Dkt. 10 (Answer) ¶ 131. Peck does not intend to—and does not—waive that defense by joining in this opposition and cross-motion.

they were delivered to the Lender in New York and call for the application of Delaware and New York substantive law. *See, e.g.,* Dkt. 6-17 (LSA) § 9.3, at 27 & Exhibit A (Note); Dkt. 6-18 (Arranger Agreement) § 16, at 9-10. There is no dispute that an initial advance of $500,000 was made to the Borrowers and that they pledged collateral to support that advance. When a dispute arose about a second request for funding and the pledging of three additional items of collateral (the "Three Items") under the loan documents, ACG and MAS filed suit against the Borrowers in the Southern District of New York (District Judge Castel, presiding) to obtain a judgment against the Borrowers under the loan documents and related relief. *See* Dkt. 6-1 (SDNY docket) & 6-2 (SDNY Complaint).

The uncontroverted evidence filed in the SDNY action—and now this Court—shows there has been massive fraud in connection with the collateral the Borrowers were required to pledge for the loan. *See, e.g.*, Dkt. 6-9 & 6-10 (detailing missing Rolex watches and original boxes being replaced with boxes of rocks, original works by Andy Warhol and Roy Lichtenstein being replaced with pictures, withholding an original piece by David LaChappelle after representing that it was in ACG/MAS's segregated warehouse unit, and other fraud); *see also* Majorie Dec. filed concurrently herewith, Exhibits A through D. Judge Castel entered an "asset freeze" temporary restraining order and order to show cause in the SDNY case to ensure that the collateral would be available for application to the Borrower's debt once the Court determined how much was owed. Dkt. 6-3. The Borrowers appeared in the SDNY case through New York counsel and then made a "hard commitment" on the record to re-pay $500,000 in two installments by September 28, 2016 and agreed to an amendment and extension of the NY TRO. Dkt. 6-6 (Transcript) at 3/12-15 and 5/lines 23-25. Among other things, the agreed and amended SDNY TRO prohibited the Borrowers and their respective "officers, agents, servants, employees,

and attorneys and all other persons who are in active concert and participation" with them from "interfering directly or indirectly with" relocation of the "Three Items" of collateral to a segregated vault for the account of ACG/MAS in a warehouse in Miami known as Atelier 4. *Id*.; *see also* Dkt. 6-3 (TRO).

Although the Borrowers made the initial $250,000 payment as agreed, they reneged on their promise to pay the other $250,000. Dkt. 6 (Majorie Dec.) ¶ 3. They also balked at moving the Three Items from Museo Vault to Attelier 4 in Miami, as agreed. It now appears that the Borrowers never had an intention of fully complying with their promises and entered into the agreement before Judge Castel to buy time to file a state court suit which would muddy the waters, undermine Judge Castel's TRO, and prevent the SDNY court from providing complete relief. Several facts prove this point.

First, this case was commenced by Kimberly Blake-Roth (Wolfgang's wife) on September 28, 2016—the day the Borrowers were obligated to pay the second $250,000. Dkt. 5-1 (docket). Although Kimberly was well aware of the existence of the SDNY case, she chose to sue in Florida state court. *Id.* The gravamen of Kimberly's Complaint (and now the Amended Complaint) is that the loan agreements and collateral pledges by the Borrowers are invalid because Kimberly did not provide requisite consent either as a "co-managing member" of WRP and/or as a spouse with a "marital interest" in some unidentified items of the collateral. *See* Dkt. 5-5 (Amended Complaint) ¶ ¶ 18 & 43-45. In other words, the relief Kimberly seeks in this action—invalidation of the loan documents and related transactions—is virtually identical to the Borrowers' assertions in the SDNY case that ACG and MAS may not sell the Three Items to pay down the Borrowers' debts.

Second, although Kimberly's lawsuit is clearly directed to challenging the Removing Defendants' right to collect against the collateral, Kimberly joined her husband and "their" company *as defendants*. The only count "against" the Borrowers in the Amended Complaint is a request for a declaration that the Borrowers lacked legal capacity to enter in the loan documents and/or pledge the collateral. Dkt. 5-5 (Amended Complaint) ¶¶ 41-50. The Amended Complaint fatally—but not surprisingly—fails to allege that there is an actual dispute between Kimberly and the Borrowers on the issues for which Kimberly seeks a declaration. Equally telling about the lack of an actual controversy between Kimberly and the Borrowers is the fact that neither Wolfgang nor WRP has filed an answer to Kimberly's claim "against" them—even though they have been parties to this case since it was first filed in September and they *have* filed counterclaims against the Removing Defendants arising out of the same agreements, transactions, and occurrences. *See* Dkt. 17 (Answer and Counterclaims).

Third, although Kimberly's Amended Complaint also named Museo Vault as a defendant, no "count" or claim is asserted against Museo Vault anywhere in the Amended Complaint. Museo Vault has moved to be dismissed from the case for that very reason. *See* Dkt. 5-10.

Finally, Kimberly used her Amended Complaint "against" the Borrowers and Museo Vault to mislead the Florida state court into issuing an "agreed" restraining order without any bond which directly contradicts the amended and extended TRO in the SDNY case. The TRO issued by the Florida state court prohibits *Museo Vault* from releasing the Three Items to the Removing Defendants—even though no claims were asserted against Museo Vault in the Amended Complaint. Kimberly sought the restraining order from the Florida state court without

providing any notice to the Removing Defendants (in fact, she did not effectuate service until well after the Florida court had issued the TRO). Dkt. 6 (Majorie Dec.) ¶ 4.

Kimberly obtained the restraining order from the Florida court without telling it about the pending SDNY case or the amended New York TRO which prohibited the Borrowers and Kimberly (in her alleged capacity as WRP's "co-managing member") from directly or indirectly interfering with relocation of the Three Items to Atelier 4 in Miami. Dkt. 6 (Majorie Dec.) ¶ 4. Worse still, Kimberly's application falsely represented to the Florida court that:

> Peck, ACG, and Modern Art ha[d] undertaken *surreptitious efforts* to deny Plaintiff's fundamental rights in the property at issue, *circumvent due process* and avoid the jurisdiction of this Court by *absconding* with property that belongs to Plaintiff" by "caus[ing] property worth well in excess of $1,000,000 (including unique items such as Paul Newman's Rolex watch and art works by Andy Warhol, Ilya Kabakov, Roy Lichenstein and David LaChappelle) to be removed from Miami Florida to New York City, New York.

Dkt. 5-6 (Application) ¶ 2, at 2 (italics added).

Kimberly now asks this Court to remand the case back to the forum Kimberly fraudulently manipulated to trump the TRO entered by the SDNY court and undermine its jurisdiction. Kimberly also asks this Court to grant her leave to amend the Amended Complaint to bolster her argument that the case should be remanded to Florida state court. Kimberly alternatively asks the Court to abstain from exercising jurisdiction under the "domestic relations" exception to subject matter jurisdiction. As explained in detail in the following sections of this memorandum, the Court should deny Kimberly's motions. The Court should dismiss or sever Museo Vault from this case and then transfer the case to the Southern District of New York where it can be consolidated with the first-filed SDNY action.

**III.     THE MOTION TO REMAND SHOULD BE DENIED**

Kimberly's Motion To Remand asserts at page 8 that, "[i]f Roth, Fine Art, or Museo Vault are properly joined as defendants diversity jurisdiction is destroyed and the case should be remanded as a matter of law." Kimberly is correct about the outcome *if* those three defendants were properly joined as defendants for the purposes of ascertaining subject matter jurisdiction. But, as shown below, they were not. Kimberly also asserts that the Removing Defendants have not established the existence of complete diversity even if the Borrowers and Museo Vault are realigned or disregarded because the Notice of Removal failed to allege the citizenship of the members of ACG, MAS, and Museo Vault. This argument is also unavailing for the reasons set forth below:

**A.     The Borrowers Must Be Realigned For Subject Matter Jurisdiction Purposes**

Citing FRCP 19(a)(1)(A)-(B), Kimberly asserts that "there is no doubt" that Wolfgang and WRP are proper defendants in this case because the Borrowers claim an interest relating to the subject of Kimberly's action against the Removing Defendants and disposing of the action in their absence may either: (a) as a practical matter impair or impede the Borrowers' ability to protect their interests; or (b) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of that interest. Removing Defendants do not disagree that Kimberly, the Borrowers, and the Removing Defendants should all be present in the same suit to adjudicate who owes what to whom, from what collateral, and why. In fact, Removing Defendants have made a similar argument in a motion for leave to add Kimberly as a party in the SDNY Case.[2]

---

[2] The motion and supporting brief filed by ACG and MAS to join Kimberly as a party in the SDNY Case is submitted as Exhibits E and F to the Declaration of Francis B. Majorie being

But agreeing that the three sets of parties should be present in the same suit does not end the analysis for determining whether removal was proper or a remand is necessary due to a lack of subject matter jurisdiction. In *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310 (11th Cir. 2012), the Eleventh Circuit affirmed a District Court's refusal to remand a removed case despite the apparent lack of complete diversity based on the designations of plaintiff and defendants in the state court pleadings. The Eleventh Circuit held:

> parties cannot *avoid* diversity by their designation of the parties [as plaintiff or defendant] . . . . Rather, it is the 'duty of the lower federal courts to look beyond the pleadings and arrange the parties according to their sides in the dispute,' *Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.DS.6, 16 n.5, 110 S. Ct. 297, 302 n.5, 107 L.Ed.2d 223 (1989)(citations and quotations omitted), as determined by the 'principal purpose of the suit' and the 'primary and controlling matter in dispute,' *City of Indianapolis*, 314 U.S. at 69, 62 S. Ct. 15. **Where the parties' interests are the same, we have held that those parties must be aligned together and have reversed a district court's failure to do so, even when the parties' interests were in opposition outside the issues raised in the subject action**. *Weller v. Navigator Marine, Inc.,* 737 F.2d 1547, 1548 (11th Cir. 1984); *see also Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156 (3d Cir, 1995)("'[W]here the party designations have jurisdictional consequences,' [the court] must align the parties before determining jurisdiction.").

*City of Vestavia*, 676 F.3d at 131-1314 (italics and bold added). Thus, the Court should realign the Borrowers to the "plaintiff" side of the caption if they hold the same interests in the "principal purpose" of the suit brought by Kimberly.

That standard is met here. Kimberly admits at page 16 note 2 of her Motion To Remand that the court "must focus on the plaintiff's complaint at the time the petition for removal was

---

filed concurrently herewith. In yet another example of concerted action among the Borrowers and Kimberly, the Borrowers have opposed joining her to the SDNY case on the ground that she cannot be sued in New York due to a lack of personal jurisdiction. *Id*. Exhibit G. ACG and MAS have filed a reply identifying Kimberly's voluntary acts which subjected her to jurisdiction in New York, including for example her demand on ACG and MAS to fund the second tranche under the loan documents and her violation of the SDNY TRO by filing this action and obtaining an ex parte TRO from the Florida court. *Id.* Exhibit H.

filed." The only "claims" in the Amended Complaint directed to Wolfgang and WRP are the "declaratory judgment" counts. In Count I (paragraphs 41 to 48), Kimberly asks the Court to declare that: (1) the Loan Agreement and Arranger Agreement invalid and "of no force and legal effect" due to Roth's alleged incapacity; (2) the second tranche funding request was not legally effective; and (3) neither ACG nor MAS have valid security interests in the collateral (including the Three Items). In Count II of the Amended Complaint, Kimberly alleges that the loan documents are "criminally usurious" under Florida law.[3]

Kimberly's Motion To Remand asserts that the declarations she requests are "adverse" to Wolfgang and WRP because, if true, the declarations could subject the Borrowers to material damage claims. But that is not true with respect to all of Kimberly's claims, which are generally aligned with both the Borrowers' assertions that the second tranche transaction was invalid and the Borrowers' agreement to pay $500,000 of cash to ACG and MAS without reference to any of the collateral at issue in the case. Indeed, the ultimate proof of the lack of adversity between Kimberly and the Borrowers is in the pleadings: the Amended Complaint does not allege that the Borrowers dispute Kimberly's claims and the Borrowers have done nothing to deny them (in fact, they have failed to answer them entirely).

The Court should therefore find that the Borrowers should be realigned as "plaintiffs' or the declaratory judgment claims "against" them should be disregarded for the purposes of

---

[3] It is undisputed that the loan document chooses New York and Delaware law—and not Florida law—to govern their interpretation and enforcement and neither state would support the assertion of a usury claim in this case (as evidenced by the fact that the Borrowers have not asserted such a claim or defense in the SDNY Case). Kimberly does not explain how or why the Court should disregard the parties' choice of law in light of the Florida Supreme Court's ruling in *Continental Mortg. Investors v. Sailboat Key, Inc.,* 395 So. 2d 507 (1981) (applying choice of law provision in loan agreement between Massachusetts lender and Florida borrower to apply Massachusetts usury law over Florida usury law). But that is for another day.

establishing subject matter jurisdiction. It is axiomatic that, "[i]n all cases arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 . . . the threshold question is whether a justiciable controversy exists." *Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*, 68 F.3d 409, 414 (11 Cir. 1995). An "actual controversy" exists where there is "a substantial continuing controversy between parties having adverse legal interests." *Emory v. Pee*ler, 756 F.2d 1547, 1551-1552 (11th Cir. 1985). "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred." *Id.* It is also clear that the Court can decline to consider a declaratory judgment action when it is being used "as yet another weapon in a game of procedural warfare." *Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1164- 1165 (10th Cir. 1982). The Court should apply these principles to the actual state of the pleadings and conduct of the parties in the litigation by Kimberly, her husband, and "their" company and find that the Borrowers should be realigned as "plaintiffs" for the purpose of determining subject matter jurisdiction in the case.

B.      **Museo Vault Should Be Disregarded Under Fraudulent Joinder Principles**

Kimberly correctly asserts that standard for determining whether a defendant has been fraudulently joined to defeat removal is whether: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant in the case. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The Ninth Circuit has stated "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). A joinder is fraudulent if "there [is] no real intention to get a

joint judgment, and . . . there [is] no colorable ground for so claiming." *AIDS Counseling & Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990).

That is the case with respect to Kimberly's joinder of Museo Vault as a named "defendant" in the Amended Complaint. Museo Vault is not named in ANY of the five counts set forth in the Amended Complaint and there is NO request for any relief against Museo Vault in that pleading. Kimberly's arguments at page 18 of the Motion To Remand that Museo Vault is a "bailee" who breached an "agreement" to "protect the works" completely ignore the fact the Amended Complaint says NOTHING about those alleged claims. Indeed, Kimberly implicitly admits that she added Museo Vault solely to keep from having to explain to the Florida court why the requested TRO was not being issued directly against the Removing Defendants ("Had Plaintiff not named Museo Vault, the Florida trial court would not have been able to award interim relief. . . .").[4] In light of the foregoing, the Court can and should conclude that Museo Vault was nothing more than a sham defendant who was fraudulently joined in an effort to defeat diversity.

C. **Once The Borrowers Are Realigned As Plaintiffs And Museo Vault Is Disregarded As Fraudulently Joined, There Is Complete Diversity**

Kimberly's last argument for remand is that there is no proof of complete diversity between the Removing Defendants on the one hand and Kimberly and the Borrowers on the other. This argument is wrong.

---

[4] What Kimberly really means is that, since she was not/is not seeking substantive relief against the Borrower and she did not want the Florida court to be told about the SDNY case and TRO (which would have happened if she told the Removing Defendants about the motion for temporary injunction), she had to name Museo Vault to mislead the Florida court into believing that immediate relief was necessary against a named party to the case. Such procedural maneuverings hardly support an argument that Museo Vault was not fraudulently joined.

There is no dispute that Kimberly and the Borrowers are citizens of Florida. The Amended Complaint itself alleges that Peck is a "resident" of the State of New York, Dkt. 5-5 ¶ 3, that both ACG and MAS are limited liability companies organized under the laws of the State of Delaware with principal places of businesses in New York, Dkt. 5-5 ¶¶ 5 & 6, and that Peck is "the sole member" of ACG and MAS, Dkt. 5-5 ¶ 7. The Complaint in the SDNY action also alleges that the "sole member" of ACG and MAS is "an individual who is domiciled in New York." Dkt. 6-7 (SDNY Complaint) ¶¶ 8-9. And, if that were not enough, Judge Catsel's TRO ordered the Borrowers to submit an affidavit establishing the citizenship of the Borrowers and then relied on those proofs to proceed based on complete diversity jurisdiction between ACG and MAS on the one hand and the Borrowers on the other. *See* Dkt. 6-3 at 8 (handwritten instructions by the Court). This Court should therefore find that the Removing Defendants have met their burden of showing post-alignment complete diversity in this case.

## IV.   KIMBERLY'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED WITHOUT PREJUDICE AND MUSEO VAULT SHOULD BE DISMISSED WITHOUT PREJUDICE

Kimberly apparently recognizes that remand is not supported by the allegations in the Amended Complaint, because she has followed the Motion To Remand with a Motion For Leave to amend her already-once Amended Complaint to provide what her motion calls more "specificity." Kimberly actually seeks to add two additional claims: (a) a hypothetical claim for damages against the Borrowers in the event Kimberly loses her claims against the Removing Defendants and the loan documents and collateral pledges are held to be valid, *see* Dkt. 14-2 at 11-12 (proposed Amended Complaint); and (b) a claim for "breach of agreement" damages against Museo Vault arising of its "fail[ure] to honor its obligations to protect the Three Items"

by "interplead[ing] them into a local state court action," *see* Dkt. 14-2 at 23 (proposed Amended Complaint). The Court should deny leave to amend to add these claims at this time.

FRCP 15 "allows parties to amend their pleadings once within a short time after the filing of responsive pleadings, and after that, "only with the opposing party's written consent or the court's leave," which "[t]he court should freely give . . . when justice so requires." FED. R. CIV. P. 15(a)(2)." *In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014).  But a motion for leave to amend should be denied where there has been bad faith, where allowing amendment would cause undue prejudice to opposing parties, or where amendment would be futile. *Engle,* 676 F.3d at 1108 (citing *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir.2001)). As one court has noted, "[b]ad faith amendments are those which may be abusive or made in order to secure some ulterior tactical advantage." *GSS Properties, Inc. v. Kendale Shopping Ctr., Inc.*, 119 F.R.D. 379, 381 (M.D.N.C. 1988). In fact, "removal cases present [particular] concerns about forum manipulation that counsel against allowing a plaintiff's post-removal amendments to affect jurisdiction." *In re Burlington N. Santa Fe Ry. Co*., 606 F.3d 379, 381 (7th Cir. 2010) (*per curiam*), quoted with approval in *Wright Transp., Inc. v. Pilot Corp*., No. 15-15184 (11th Cir. November 22, 2016).

The Court should deny Kimberly's request to add a new damages claim against the Borrowers at this time.  Kimberly's proposed amendments concerning the Borrowers are futile: they once again fail to allege facts showing an actual case or controversy between them. Kimberly's efforts to bolster that defect through the assertion of an alternative, hypothetical claim for "damages" are also made in bad faith to the detriment of the Removing Defendants. Kimberly can always sue her husband and "their" company in Florida after her hypothetical claim "against" them ripens. The Removing Defendants are neither necessary nor proper parties

to such a claim.  Indeed, allowing Kimberly to add such a claim after removal only rewards her efforts to manipulate the Court's subject matter jurisdiction to keep the case out of the federal system.

Denying the requested amendment against the Borrowers without prejudice is a sound exercise of the Court's discretion for a second, equally important reason. As explained in more detail in section V below, this case should be transferred to the SDNY under the first-filed rule. One of the purposes of that rule is to allow the first-filed court to decide whether the second filed suit should be dismissed, stayed, or consolidated. A motion is already pending in the SDNY court to amend the pleadings to add Kimberly (in fact, the SDNY court was informed of the pendency of this case and the possible transfer in ACG/MAS's motion in the SDNY). *See* Majorie Dec. Exhibits E through H. Thus, by denying leave to amend without prejudice at this time, the Court will be providing the SDNY court maximum flexibility over how the second-filed case is to be litigated.

The Court should also deny Kimberly's request for leave to add a new damages claim for "breach of agreement" against Museo Vault for similar reasons. The Removing Defendants are not named as parties to that alleged claim and their presence is not required to enforce it. It remains to be seen whether Kimberly has suffered any actual damages due to a lack of interpleader (indeed, it is hard to fathom any except those associated with forum shopping away from the SDNY court). The Court should therefore deny the motion to amend as to those allegations and exercise its discretion under FRCP 21 to dismiss Museo Vault as a party without prejudice (since there are no claims asserted against it in the Amended Complaint). *See* FRCP 21(a) (providing that, "on motion or on its own, the court may at any time, on just terms, add or drop a party" or "sever any claims against a party"). Alternatively, the Court could exercise its

discretion under FRCP 21 to sever Museo Vault into a separate case, grant Kimberly leave to amend the Amended Complaint against Museo Vault (only) in that severed case, and then remand that severed case between those two parties to Florida state court. Either way, Kimberly would not be precluded from suing Museo Vault (if she truly wants to do so) while this case would be ready for transfer to the SDNY under the first-filed rule.

## V. THE COURT SHOULD TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK UNDER THE FIRST-FILED RULE

The Removing Defendants have not only opposed the Motion To Remand, they have filed a cross-motion to transfer this case to the Southern District of New York under the first-filed rule. The Court should grant that motion for the reasons set forth below.

"Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (citations omitted). The "court initially seized of a controversy should be the one to decide the case . . . It should make no difference whether the competing courts are both federal courts or a state and federal court with undisputed concurrent jurisdiction." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982). Once the Court determines that the first-filed rule applies, it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999). Rather, "the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Cadle*, 174 F.3d at 606.

To determine whether to apply the first-to-file rule, the second court must consider whether the two lawsuits are "involve substantially similar issues [such] that one court should

decide the subject matter of both actions." *See Texas Instruments Inc. v. Micron Semiconductor, Inc.,* 815 F. Supp. 994, 997 (E.D. Tex. 1993) (citation omitted). The two cases need not be identical; nor must the parties be identical for the rule to apply. *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950-51 (5th Cir. 1997). The two lawsuits need only involve the same core issues. Once the second court determines that the action satisfies the first-to-file rule, then the second court must defer to the first filed court to determine whether the second case should proceed. *Cadle*, 174 F.3d at 609. In the Eleventh Circuit, "the party objecting to jurisdiction in the first-filed forum [must] carry the burden of proving `compelling circumstances' to warrant an exception to the first-filed rule." *Manuel,* 430 F.3d at 1135.

Here, all of the requirements of the first-to-file rule are satisfied. The SDNY case was filed before the present case and is, in fact, further along than this one. The SDNY case and this case involve the same core issues: both lawsuits arise from and relate to the loan documents, the effect of the first amendment/second tranche request; and what collateral was pledged and can be sold to pay what amount of debt. In fact, the allegations are so closely related that any resolution of the issues in one case will necessarily resolve most of the issues in the other. Moreover, once Museo Vault is dismissed, both the SDNY case and this case will involve identical parties. The Court should therefore grant the Removing Defendants' motion to transfer and transfer the case to the SDNY under the first-filed rule.

## VI.     THE COURT SHOULD NOT ABSTAIN FROM EXERCISING JURISDICTION

Kimberly's last argument in her Motion To Remand is that the Court should abstain from exercising diversity jurisdiction under the domestic relations exception. The Court should reject this request for the following reasons.

First, as noted in Section V above, the decision whether or not to abstain should be left to Judge Castel in the SDNY, under the first-filed rule.

Second, the United States Supreme Court has squarely ruled that "the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree. . . ." *Ankenbrandt v. Richards*, 504 U.S. 689, 702, 112 S.Ct. 2206 2214, 119 L.Ed.2d 468 (1992). Kimberly does not even cite *Ankenbrandt,* let alone distinguish it. In fact, all of the cases cited in Kimberly's Motion To Remand predate *Ankenbrandt* by six years or more. Because the "marital interests" issue in this case does not involve the issuance of a divorce, alimony, or child custody decree, the domestic relations exception is no bar to transferring this case to the Southern District of New York.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), co-counsel Francis B. Majorie (who will be filing a pro hac vice motion if the motion to transfer is denied or oral argument is required) made a good faith effort to confer with counsel for Kimberly and the Borrower Defendants about the relief requested and agreement could not be reached so as to avoid the necessity of the motion.

Dated:  December 13, 2016

                            Respectfully submitted:

                            ALVAREZ BARBARA, LLP

                            By: /s/ Richard L. Barbara
                                Richard L. Barbara
                                FBN: 0012243
                                Hugo Alvarez
                                FBN: 163960
                            rbarbara@alvarezbarbara.com
                            halvarez@alvarezbarbara.com
                            1750 Coral Way
                            Second Floor
                            Miami, FL
                            Tel: (305) 263-7700
                            Fax:  (305) 263-7699

                                        Counsel for Defendants Ian Peck,
                                        Modern Art Services, LL, and
                                        ACG Capital Company, LLC

Of counsel:
(Pro hac vice motions to be filed)

The Majorie Firm Ltd.

Francis B. Majorie
fbmajorie@themajoriefirm.com
and
Thomas J. Annis
tannis@themajoriefirm.com

4901 LBJ Freeway, Fourth Floor
Dallas, Texas 75244
Tel: (214) 522-7400
Fax: (214) 522-07911

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF electronic mail notification system on this 13th day of December, 2016, upon all parties that receive notice from that system.

                                          /s/ Hugo Alvarez
                                          Hugo Alvarez
                                          FBN 163960